**Charles Edward WINROW,
Jr., Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee,
at Jackson.

Jan. 6, 1983.

Permission to Appeal Denied by Supreme
Court March 14, 1983.

Richard R. Vaughn, Memphis, for appellant.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., John W. Overton, Jr., Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

DUNCAN, Judge.

The appellant, Charles Edward Winrow, Jr., is an inmate of the penitentiary where he is serving sentences after his 1976 convictions for burglary and assault with intent to commit voluntary manslaughter.[1] He filed a petition for post-conviction relief in the trial court, which was dismissed after an evidentiary hearing.

In this appeal the appellant contends that the trial court erred in finding that he was not denied the effective assistance of counsel at his trial, and that he was not denied due process of law because of the State's failure to furnish him with a statement made by the victim of the crimes. We find no merit to the appellant's contentions.

The record shows that the appellant was convicted on June 24, 1976, for crimes committed in 1975. He was represented at his original trial by Anthony Sabella, his privately retained counsel. At the evidentiary hearing, both the appellant and Mr. Sabella testified.

According to the testimony of the appellant, both he and a codefendant, Leroy Hervey, were represented by Mr. Sabella. Hervey's case was severed and he entered a plea of guilty. Before the appellant's trial,

1. His convictions were affirmed by this Court on August 11, 1977. *See Charles Edward Win-* row v. State, No. 127 (Tenn.Cr.App., Jackson).

the victim, Willie Stitman, approached the appellant and indicated he would not testify if he were reimbursed for his losses. Mr. Stitman then went to Mr. Sabella's office and executed a statement, in which he exonerated the appellant and expressed his desire to drop the charges. Nevertheless, the State proceeded to trial, and when Mr. Stitman testified contrary to his statement, he was confronted with it by Mr. Sabella. Stitman testified that the statement was in fact false, and suggested that it had already been prepared before he arrived at Mr. Sabella's office. The statement was introduced into evidence and read to the jury.

Further, according to the appellant, the State on redirect examination of Mr. Stitman, introduced a second statement he had given to the district attorney general's office. In this statement, Stitman recounted the circumstances of the incident and also told about the circumstances of his signing the other statement in Mr. Sabella's office. As a result of Mr. Stitman's testimony and written statement suggesting some impropriety on Mr. Sabella's part in connection with his preparation of the first notarized statement, Mr. Sabella took the stand and testified as a witness at the appellant's trial. Mr. Sabella related to the jury the circumstances surrounding Stitman's visit to his office and the giving of the statement.

Also, the appellant complained in his testimony at the evidentiary hearing that Mr. Sabella did not file a discovery motion, did not get a copy of Mr. Stitman's second statement before trial, and did not subpoena certain possible defense witnesses.

Anthony Sabella testified that he and Jack Nelson, an associate, represented the appellant at his trial. He said he also represented the appellant's codefendant, Leroy Hervey, who pled guilty and was given a ninety (90) day jail sentence. Mr. Sabella stated that the appellant was offered substantially the same kind of plea bargain, but that he would not take it because he was subject to a Federal parole violation. He explained about taking the statement from Mr. Stitman, and said that when Stitman testified at trial suggesting that Mr. Sabella had presented him with a prepared statement containing false information, he at first attempted through cross-examination to portray the actual situation. Since the credibility of the appellant, as opposed to that of Mr. Stitman, was the main issue for the jury to resolve, Mr. Sabella decided he would have to testify, as he saw no other way to attack Mr. Stitman's credibility. He stated that his only purpose in testifying was to test Mr. Stitman's credibility, and he attempted to do this by relating to the jury the true circumstances under which the statement was made. Jack Nelson, his associate, handled the examination of both the appellant and Mr. Sabella.

Further, Mr. Sabella testified he investigated the case, talked to witnesses, effected discovery, and had discussions with the district attorney general handling the case. He said that after investigating the case he concluded that the appellant would be his own best witness. He testified that Clara Cannon, one witness suggested by the appellant, was a prostitute over whom the dispute arose, and that he concluded she would not be a suitable witness. The codefendant was not called because his testimony would hurt the appellant more than it would help. Arthur Black and Mike Williams, who were mentioned by the appellant in his post-conviction testimony as possible witnesses in his behalf, were unknown to Mr. Sabella. He had no recollection that their names had ever been suggested to him by the appellant as possible witnesses.

■ The appellant argues that his counsel was ineffective because he testified as a defense witness, and thus his own counsel's credibility became an issue. The *Code of Professional Responsibility,* Rule 8, *Rules of the Supreme Court,* does not mandatorily preclude an attorney from serving as a witness for his client; rather, the Code categorizes the question as an ethical consideration. *Rules of the Supreme Court,* Rule 8, EC 5–9. Certainly, an attorney should always be mindful of the ethical situation in deciding whether to be a witness for his client, and should only in rare instances,

after exercising great caution, decide to do so. Nevertheless, in some cases, an issue may arise in the course of a trial where a miscarriage of justice could take place if an attorney was totally prohibited from serving as a witness for his client.

◼ We have heretofore set forth in our summary of the evidence the reasons why Mr. Sabella found it necessary to testify in this case. Mr. Sabella was confronted with a situation during the trial where he was the only witness who could contradict Mr. Stitman's testimony indicating that Mr. Sabella had prepared a false statement for him to sign. Obviously, the testimony given by Mr. Sabella on the point was contrary to Mr. Stitman's trial testimony, and was offered for the purpose of advancing the appellant's cause. Even though the jury found the defendant guilty, it does not change the fact that Mr. Sabella was doing his best at the time to aid the appellant's case. We find nothing in the record to show that Mr. Sabella's actions were detrimental to the appellant. The trial court properly found no ineffectiveness of counsel on this issue.

◼ Next, the appellant argues that a conflict of interest resulted by reason of Mr. Sabella's representation of both him and his codefendant Hervey. Clearly, since Hervey's case was severed and he had already pled guilty prior to the appellant's trial, no conflict of interest was present. The appellant did not offer any proof at the evidentiary hearing to show that any prejudice resulted to him by reason of Mr. Sabella's representation of him and Hervey.

◼ Also, regarding the appellant's complaint about Mr. Sabella's failure to file a discovery motion, we note that this case arose before the advent of the Rules of Criminal Procedure. Nevertheless, Mr. Sabella testified he obtained information from the district attorney general handling the case. Mr. Sabella said while he was not given a copy of the victim's contradictory statement, he was informed of the substance of it. At any rate, the State was under no obligation to furnish the victim's statement to the defendant or his counsel.

◼ Additionally, Mr. Sabella testified he interviewed as many potential witnesses as he could locate. He said that as best as he could remember, the appellant did not furnish him with the names of other potential witnesses, except Clara Cannon, and that he deemed it best not to call her because of her status. This was a legitimate exercise of trial tactics · by the appellant's counsel. *State v. Martin,* 627 S.W.2d 139 (Tenn.Cr. App.1981).

◼ At the conclusion of the evidentiary hearing, the trial court found that the appellant's trial counsel had acted properly in testifying as a witness, that no conflict of interest was present, that Mr. Sabella had adequately investigated the case, and that Mr. Sabella had obtained adequate discovery under the rules existing at that time. After our review of this record, we find that the evidence does not preponderate against these findings. *Janow v. State,* 4 Tenn.Cr.App. 195, 470 S.W.2d 19 (1971). This record shows that Mr. Sabella's representation of the appellant was within the "range of competence" demanded of attorneys in criminal cases as outlined by our Supreme Court in *Baxter v. Rose,* 523 S.W.2d 930 (Tenn.1975).

◼ In his final complaint, the appellant argues that he was denied his due process rights to a fair trial when the State did not furnish him with a copy of the victim's police statement, which statement was contrary to the one the victim gave to appellant's counsel.

This issue should have been raised on appellant's direct appeal, and since it was not it must be considered waived. T.C.A. § 40–3812; *Arthur v. State,* 483 S.W.2d 95 (Tenn.1972). At any rate, the State was under no obligation to furnish the statement to the appellant. The statement contained no exculpatory information. Further, we note that the appellant's trial counsel testified he was aware of the substance of the statement. We find that the appellant was not constitutionally deprived in this regard.

The judgment of the trial court is affirmed.

WALKER, P.J., and DWYER, J., concur.