Raymond Eugene TEAGUE, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee,
at Nashville.

Dec. 14, 1988.

Permission to Appeal Denied by Supreme
Court June 5, 1989.

William P. Redick, Jr., Nashville, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Gordon W. Smith, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., Jerry Sloan, Asst. Dist. Atty. Gen., Chattanooga, for appellee.

## OPINION

JONES, Judge.

The petitioner, Raymond Eugene Teague, was convicted of murder in the first degree by a jury of his peers. The jury subsequently sentenced the petitioner to the extreme penalty of death. His conviction and sentence were affirmed by the Tennessee Supreme Court on direct appeal. *State v. Teague*, 645 S.W.2d 392 (Tenn. 1983), *appeal after remand*, 680 S.W.2d 785 (Tenn.1984). The United States Supreme Court denied the petitioner's application for the writ of certiorari. *Teague v. Tennessee*, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 662 (1985).

On November 1, 1985, the petitioner instituted a post-conviction proceeding. The petitioner sought to have his conviction for carrying a weapon for the purpose of going armed and murder first degree set aside and vacated. The petitioner also asked the trial court to consider newly discovered evidence "by way of a proceeding in the nature of a writ of Error Coram Nobis pursuant to T.C.A. § 40–26–105." The trial court denied the petition after an evidentiary hearing.

## ISSUES PRESENTED FOR REVIEW

The petitioner raises a multitude of issues for our review. He contends his convictions and death sentence should be set

aside and vacated because (a) evidence discovered subsequent to the petitioner's conviction, which was not known prior to trial, may have resulted in a different judgment had it been presented at trial, (b) the State asserted in the guilt stage that the appellant committed another crime, namely, the murder of John Mark Edmonds, but the State did not introduce evidence of this fact, (c) the petitioner's conviction in the John Mark Edmonds' case, which the jury found as an aggravating circumstance, is invalid and could not be used as an aggravating circumstance, (d) the assistant district attorney general misled the jury concerning its ultimate responsibility for determining the appropriateness of a death sentence, (e) the assistant district attorney general diminished the significance of factors in mitigation not specified in T.C.A. § 39–2–203(j), (f) a question was posed by the assistant district attorney general in the presence of the jury which assumed non-existent, highly prejudicial facts in relation to a subject which had been improperly presented at the previous sentencing hearing, (g) the assistant district attorney general elicited testimony concerning the petitioner's silence after he had been arrested and given the *Miranda* warnings, (h) the assistant district attorney general failed to provide the defendant with relevant, exculpatory evidence, namely, an offer made by the police to Jimmy Cook for his cooperation in the prosecution, (i) the trial judge committed error of prejudicial dimensions when instructing the jury regarding aggravating circumstances, (j) the instructions given by the trial judge shifted the burden of proof from the prosecution to the defense, (k) defense counsel failed to adequately question prospective jurors who were successfully challenged for cause because of their opposition to the death penalty, (1) defense counsel failed to examine prospective jurors in a manner which would reveal if a juror would automatically impose the sentence of death regardless of circumstances, (m) the trial court erred in refusing to approve compensation for investigative services, (n) the trial court erred in refusing to grant a continuance for the purpose of developing the factual investigation of the case, (o) the trial court erred by indicating a general hostility to witnesses favorable to the petitioner, (p) the trial court erred in excluding relevant, material and admissible evidence which was favorable to the petitioner, (q) the death penalty statute is unconstitutional because it mandatorily requires the jury to impose the death sentence if the jury cannot say that the mitigating circumstances outweigh the aggravating circumstances, (r) the State failed to prove beyond a reasonable doubt the aggravating circumstances outweighed the mitigating circumstances, (s) the method of execution, namely electrocution, amounts to infliction of wanton and unnecessary torture, (t) the death penalty, as applied in Tennessee, is discriminatory on the basis of gender, and (u) no significant proportionality review was applied in this case or in other cases in which the death penalty is imposed.

## SUMMARY OF PRIOR PROCEEDINGS

The facts surrounding the death of Terri Teague are set forth in the prior opinions of our Supreme Court in *State v. Teague*, 645 S.W.2d 392 (Tenn.1983) and *State v. Teague*, 680 S.W.2d 785 (Tenn.1984), *cert. denied*, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 662 (1985). Our discussion will be limited to a summary of the prior proceedings unless a discussion of the facts are essential to an issue raised by the petitioner.

On the 19th day of September, 1979, the Hamilton County Grand Jury indicted the petitioner for murder first degree. The indictment alleged the petitioner murdered John Mark Edmonds. Before he was tried for this offense, his ex-wife, Teresa (Terri) Lynn Teague, was murdered. On the 25th day of April, 1980, the petitioner was again indicted by the Hamilton County Grand Jury for murder first degree. The indictment alleged the petitioner murdered Mrs. Teague, his former wife.

The State elected to try the Terri Teague murder case first. On the 22nd day of November, 1980, the petitioner was convicted of murder in the first degree and sentenced to the extreme penalty of death. The jury found two aggravating circumstances: (a) the murder of Mrs. Teague

was especially heinous, atrocious or cruel in that it involved torture or depravity of mind, T.C.A. § 39–2–203(i)(5), and (b) the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant, or another. T.C.A. § 39–2–203(i)(6). The petitioner appealed his conviction and death sentence as of right to the Supreme Court following the denial of his motion for a new trial. *See* T.C.A. § 39–2–205(a).

While the petitioner's appeal was pending in the Tennessee Supreme Court, the John Mark Edmonds murder case was set for trial. The day before the trial was to commence, the assistant district attorney generals, who were to prosecute the petitioner, advised defense counsel they were willing to recommend a sentence of ten (10) years in the state penitentiary if the petitioner desired to dispose of the prosecution without a trial. The following day the petitioner entered a plea of nolo contendere to the offense of accessory before the fact of murder in the second degree. He was sentenced to a term of ten (10) years in the State penitentiary pursuant to the plea bargain agreement.

The Tennessee Supreme Court subsequently affirmed the petitioner's conviction for murder in the first degree in the Teague case. However, the Court set aside the death sentence and remanded the cause to the trial court for a new sentencing hearing. The Court held it was prejudicial error for the State to introduce, over the objection of the petitioner, an arrest warrant, issued on June 1, 1978, which charged the petitioner with conspiring to murder James Lowe, Jr. The warrant stated on its face that it had been dismissed on the recommendation of the State approximately two years prior to Mrs. Teague's death.

The trial court granted a change of venue to Rutherford County after remand. On the 25th day of August, 1983, the petitioner was again sentenced to the extreme penalty of death. The jury again found two aggravating circumstances: (a) the defendant had previously been convicted of a felony involving the use or threat of violence to the person, T.C.A. § 39–2–203(i)(2), and (b) the murder was committed for the purpose of avoiding, interfering, or preventing a lawful arrest or prosecution of the defendant or another. T.C.A. § 39–2–203(i)(6).

The petitioner appealed the death sentence. *See* T.C.A. § 39–2–205(a). The Supreme Court affirmed the sentence. *State v. Teague*, 680 S.W.2d 785 (Tenn.1984). The United States Supreme Court denied the petitioner's application for the writ of certiorari. *Teague v. Tennessee*, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 662 (1985).

The petitioner subsequently instituted this post-conviction proceeding.

### ERROR CORAM NOBIS PROCEEDINGS

■ The petitioner contends in his brief that the petitioner attacked his conviction and death sentence in the trial court by (a) a proceeding in the nature of a writ of error *coram nobis* pursuant to T.C.A. § 40–26–105, and (b) a petition for post-conviction relief pursuant to T.C.A. § 40–30–101 to 40–30–124 (Supp.1988). While the technical record contains a petition for post-conviction relief, it does not contain a separate petition for the writ of error *coram nobis*. However, the following allegations appear in the petition for post-conviction relief:

9. The Petitioner respectfully asks this court through a proceeding in the nature of a Writ of Error Coram Nobis pursuant to T.C.A. § 40–26–105 to vacate and set aside the conviction and sentence imposed against this Petitioner on these indictments due to the fact that this court has inherent power to set aside a judgment, previously entered before, which was procured by fraud and misrepresentation.

The Petitioner submits that the conviction imposed upon him was, in fact, procured by fraud and misrepresentation and not due to any criminal acts of culpability on his part or by his commission. The petitioner would submit this contention based upon proof to be submitted to this Court which reflects material errors in fact and newly discovered evidence that should have been before the trial jury "may have resulted in a different judgment." T.C.A. § 40–26–105. In

fact, the Petitioner respectfully submits that had this information been available to the trier of fact that a different result would have not only been possible, but likely. The material errors in fact and the newly discovered evidence were obtained after the verdict of guilt and the sentence of death were returned by the jury and officially entered in the court records. The information contemplated was found outside the record of this case and pertained to matters that were not available to be litigated by the defendant at the time of trial. The Petitioner requests an opportunity to be heard on this issue.

It is apparent from a reading of the petition that the petitioner failed to state subsequently or newly discovered facts to support the granting of a writ of error coram nobis. The allegations are conclusory in nature, and, for the most part, simply recite the language of the statute which affords the defendant the remedy of the writ of error coram nobis. See T.C.A. § 40–26–105. No affidavits were attached to the petition nor were any affidavits filed in the cause prior to the commencement of the evidentiary hearing.

Due to the procedural defaults and the unconventional procedure used by the petitioner in presenting the petition for the writ of error coram nobis, it is necessary for this Court to review the conventional procedure utilized when a defendant in a criminal proceeding seeks a new trial on the ground of subsequently or newly discovered evidence.

Prior to 1955 the remedy of error coram nobis was not available to individuals who had been convicted of a criminal offense. Green v. State, 187 Tenn. 545, 216 S.W.2d 305 (1948). The remedy was limited in scope to civil proceedings. In 1955 the Tennessee General Assembly extended this remedy to criminal prosecutions. T.C.A. § 40–26–105. However, the relief available was limited to "errors dehors the record and to matters that were not or could not

have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding," T.C.A. § 40–26–105, or a post-conviction proceeding, see Rowe v. State, 498 S.W.2d 322, 325 (Tenn.1973), or "subsequently or newly discovered evidence relating to matters which were litigated at the trial" when the trial judge "determines that such evidence may have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40–26–105. See Cole v. State, 589 S.W.2d 941 (Tenn.Crim.App. 1979). As can be seen from the foregoing, the purpose of this remedy "is to bring to the attention of the court some fact unknown to the court, which if known would have resulted in a different judgment." State ex rel. Carlson v. State, 219 Tenn. 80, 85–86, 407 S.W.2d 165, 167 (1966).

■ The procedure to be followed when invoking the remedy of the writ of error coram nobis is governed by the same rules and procedure applicable to civil cases to the extent the civil rules do not conflict with the provisions of T.C.A. § 40–26–105. See State ex rel. Carlson v. State, 219 Tenn. at 85, 407 S.W.2d at 167; Johnson v. Russell, 218 Tenn. 443, 447–448, 404 S.W.2d 471, 473 (1966).

■ When the petitioner seeks relief on the ground of subsequently or newly discovered evidence relating to matters which were litigated at the trial on the merits, the procedure is almost identical in nature to a motion for a new trial on the ground of newly discovered evidence. As a practical matter, the only difference is the time in which the issue must be raised. When the issue is raised in a motion for a new trial, the motion must be filed "within thirty (30) days of the date the order of sentence is entered." T.C.A. § 40–35–401 (Supp.1988); Tenn.R.Crim.P. 33(b).[1] On the other hand, this issue may be raised in a writ of error coram nobis proceeding "within one (1) year after the judgment becomes final." T.C.A. § 27–7–103.[2]

---

**1.** The rules provide that the trial court "shall upon motion allow amendments liberally until the day of the hearing of the motion for a new trial." Tenn.R.Crim.P. 33(b). State v. Butler, 626 S.W.2d 6, 12 (Tenn.1981). Cf. State v.

Washington, 658 S.W.2d 144, 146 (Tenn.Crim. App.1983).

**2.** An academic question is presented as to whether the petitioner raised this issue timely.

■ A petition for the writ of error *coram nobis* in a criminal case, which seeks relief on the ground of subsequently or newly discovered evidence, should recite: (a) the grounds and the nature of the newly discovered evidence, *Crawford v. Williams*, 31 Tenn. 341, 342 (1851), (b) why the admissibility of the newly discovered evidence may have resulted in a different judgment if the evidence had been admitted at the previous trial, T.C.A. § 40–26–105, (c) the petitioner "was without fault in failing to present" the newly discovered evidence at the appropriate time, T.C.A. § 40–26–105, *see State ex rel. Carlson v. State*, 219 Tenn. 80 at 87, 407 S.W.2d 165, 168 (1966), *Johnson v. Russell*, 218 Tenn. at 448, 404 S.W.2d at 473, and (d) the relief sought by the petitioner. Tenn.R.Crim.P. 47. Affidavits should be filed in support of the petition either as exhibits or attachments to the petition or at some point in time prior to the hearing. *See Ross v. State*, 130 Tenn. 387, 390–394, 170 S.W. 1026, 1027 (1914); *State v. Todd*, 631 S.W.2d 464, 466–467 (Tenn.Crim.App.1981). An affidavit, like the testimony of a witness, must be relevant, material and germane to the grounds raised in the petition; and the affiant must have personal knowledge of the statements contained in the affidavit. *State v. Byerley*, 658 S.W.2d 134, 141 (Tenn.Crim.App.1983). Affidavits which fail to meet this criteria will not justify the granting of an evidentiary hearing since the information contained in the affidavits, taken as true, would not entitle the petitioner to relief. *See State v. Byer-*

*ley*, supra; *State v. Todd*, supra. However, if the affidavits are sufficient, and justify an evidentiary hearing, the trial court should not determine the merits of the petition on the strength of the affidavits alone. *See Hicks v. State*, 571 S.W.2d 849, 852 (Tenn.Crim.App.1978). In *Hicks* this Court, addressing an issue of newly discovered evidence raised in a motion for a new trial, said that "[t]o grant relief on affidavits only would deny the opposing party an opportunity to test the accuracy or veracity of the information contained therein by confrontation or by evidence contrary to this assertion." 571 S.W.2d at 852.

■ The decision to grant or deny a petition for the writ of error *coram nobis* on the ground of subsequently or newly discovered evidence rests within the sound discretion of the trial court. *See* T.C.A. § 40–26–105; *Jones v. State*, 519 S.W.2d 398, 400 (Tenn.Crim.App.1974). Before the petitioner is entitled to relief, the petitioner must establish and the trial court must find that the subsequently or newly discovered evidence "may have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40–26–105. Of course, this statutory mandate presupposes that the subsequently or newly discovered evidence proven by the petitioner is (a) admissible pursuant to the applicable rules of evidence, and (b) material to the issues or grounds raised in the petition. As a general rule, subsequently or newly discovered evidence which is simply cumulative to other evidence in the record, *see Scruggs v.*

The petitioner was convicted of murder first degree and sentenced to death on November 18, 1980. The petitioner's conviction for murder first degree was affirmed by the Tennessee Supreme Court on January 31, 1983; but the case was remanded to the trial court for a new sentencing hearing. *State v. Teague*, 645 S.W.2d 392 (Tenn.1983). The petitioner was again sentenced to death on August 22, 1983. This death sentence was affirmed by our Supreme Court on October 29, 1984. *State v. Teague*, 680 S.W.2d 785 (Tenn.1984), *cert. denied*, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 662 (1985).

In *Johnson v. Russell*, supra, it appears our Supreme Court, adopting the rule in civil cases, ruled the one (1) year statute of limitations began to run from the date the judgment was entered in the trial court, October 9, 1963, rather than the date the Supreme Court affirmed the

conviction, June 4, 1965. In *Johnson* the petition was filed on November 30, 1965, well within one year from the date the Supreme Court affirmed the conviction. *See Cates v. City of McKenzie*, 176 Tenn. 313, 315–316, 141 S.W.2d 471, 471–472 (1940). However, this Court is of the opinion that due to the nature of our present statutes, rules and common law as well as the nature and seriousness of death penalty proceedings, the statute should commence to run from the date the judgment of conviction and death sentence became final—the date the United States Supreme Court denied the petition for the writ of certiorari and supersedeas. Any other rule, particularly given the history of this case, would cause an undue hardship upon the accused, his counsel, trial courts, and appellate courts; and it would be contrary to the orderly administration of justice.

*State,* 218 Tenn. 477, 480, 404 S.W.2d 485, 486 (1966), or serves no other purpose than to contradict or impeach the evidence adduced during the course of the trial, *see Hawkins v. State,* 220 Tenn. 383, 392, 417 S.W.2d 774, 778 (1967), will not justify the granting of a petition for the writ of error *coram nobis* when the evidence, if introduced at the trial, would not have resulted in a different judgment.

In the case *sub judice* the procedure utilized by the petitioner was unorthodox and unconventional. First, as indicated, no separate petition for the writ of error *coram nobis* was filed in the cause—it was included in a numbered paragraph in the petition for post-conviction relief.[3] Second, the petitioner failed to allege in the paragraph contained in the petition for post-conviction relief the subsequently or newly discovered evidence, how it related to the previous trial, or that the petitioner was without fault in failing to present the evidence timely. Third, no affidavits were filed with or subsequent to the filing of the petition, but before the evidentiary hearing. Thus, the petitioner failed to establish that he was entitled to an evidentiary hearing regarding this issue.

 The vast majority of the affidavits contained in the record were introduced into evidence through the affiants when they testified at the evidentiary hearing—placing the proverbial cart before the horse.[4] It is elementary that once the witness had testified, on direct, and was subjected to cross-examination, the affidavit of the witness served no useful purpose, was inadmissible as evidence, and should not have been introduced as evidence over the objection of the assistant district attorney general. *See State v. Braggs,* 604 S.W.2d 883, 885 (Tenn.Crim.App.1980). These affidavits were self-serving, contained statements made out-of-court, and were admitted for the truth of the averments contained in the respective affidavits. More-over, the affidavits, as well as the testimony of the witnesses, were predicated upon the rankest form of hearsay, which would not have been admissible at either of the previous trials, the recantation of one affiant's previous trial testimony, who was not called as a witness at the evidentiary hearing,[5] and inferences drawn by the respective affiants, or a person with whom the affiant may have spoken. No effort was made to interview Marshall Skinner, the person whom the petitioner contends actually killed his former wife. Terry Wynne, the alleged accomplice of Skinner, had not been found after his escape from the Department of Correction.

The trial court's findings of fact and conclusions of law regarding this issue state:

(1) Petitioner's assertion that his conviction was procured by fraud and misrepresentation is completely unfounded and without merit. The proof at the evidentiary hearing *did not show any material errors in fact and the Court does not give any credence to the "newly discovered evidence."* The said evidence does not show that petitioner is not guilty or that he did not receive a fair trial. A careful consideration of the trial transcript, the second sentencing hearing, and the evidentiary hearing on this post-conviction petition lets the mind rest easy that justice was done in the trial, conviction and Death Sentence of Petitioner for the Murder of Terri Teague. [Emphasis added].

The evidence contained in the record does not preponderate against the trial court's findings; and, as a consequence, we are bound by those findings.

Based upon our independent review of the record, we too reach the conclusion that the tidbits of evidence, which would have been admissible pursuant to the applicable rules of evidence, would not have resulted

---

**3.** In *Gant v. State,* 507 S.W.2d 133, 136–137 (Tenn.Crim.App.1973), this Court held that a post-conviction proceeding cannot be used to review and question the sufficiency of the evidence.

**4.** T.C.A. § 40–30–117 does not contemplate the use of oral testimony as well as an affidavit from the same witness. The statute uses the conjunction "or", which means in the alternative.

**5.** T.C.A. § 40–30–117 permits the use of affidavits in lieu of the testimony of witnesses or the deposition of witness in the discretion of the trial court.

in a different judgment if the evidence had been admitted in the previous trial or second sentencing hearing.

This issue is without merit.

## SCOPE OF POST–CONVICTION PROCEEDINGS

In this jurisdiction relief may be obtained from convictions and sentences which are void or voidable due to the "abridgement ... of any right guaranteed by the constitution of this state or the Constitution of the United States, including a right that was not recognized as existing at the time of the trial if either constitution requires retrospective application of that right," T.C.A. § 40–30–105, pursuant to the Post–Conviction Procedure Act,[6] unless the ground or grounds raised by the petitioner have been waived or previously determined. T.C.A. §§ 40–30–111 and 40–30–112.

A ground for relief is said to have been "waived" when the petitioner "knowingly and understandingly failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented."[7] Of course, there is a statutory presumption, rebuttable in nature, that "a ground for relief not raised in any such proceeding which was held was waived." T.C.A. § 40–30–112(b)(2). Conversely, a ground for relief is said to have been "previously determined" when "a court of competent jurisdiction has ruled on the merits [of the ground] after a full and fair hearing." T.C.A. § 40–30–112(a).

In the case *sub judice* several issues presented for our review have either been waived or previously determined, and, as a consequence, will not be considered by this Court. The following issues fall within these two categories:

(a) the State asserted in the guilt stage that the appellant committed another crime, namely, the murder of John Mark Edmonds;[8]

(b) the assistant district attorney general diminished the significance of factors in mitigation which are not specified in T.C.A. § 39–2–203(j);

(c) the posing of a question by the assistant district attorney general in the presence of the jury which assumed highly prejudicial facts in relation to a subject which had been improperly presented at the previous sentencing hearing;[9]

(d) the assistant district attorney general elicited testimony concerning the petitioner's silence after he had been arrested and given the *Miranda* warnings;[10]

(e) the trial court committed error of prejudicial dimensions when instructing the jury regarding aggravating circumstances;

(f) the instructions given by the trial judge shifted the burden of proof from the prosecution to the defense;

(g) the death penalty statute is unconstitutional because it mandatorily requires the jury to impose the death sentence if they cannot say that the mitigating circumstances outweigh the aggravating circumstances;[11] and

---

**6.** T.C.A. § 40–30–101 to 40–30–124 (Supp.1988); *Housler v. State,* 749 S.W.2d 758, 760 (Tenn. Crim.App.1988); *Malone v. State,* 707 S.W.2d 541, 544 (Tenn.Crim.App.1985); *Haggard v. State,* 4 Tenn.Crim.App. 620, 622, 475 S.W.2d 186, 187 (1971); *State ex rel. Fields v. Henderson,* 1 Tenn.Crim.App. 443, 445, 443 S.W.2d 837, 838 (1969).

**7.** T.C.A. § 40–30–112(b)(1); *Arthur v. State,* 483 S.W.2d 95, 97 (Tenn.1972); *Givens v. State,* 702 S.W.2d 578, 580 (Tenn.Crim.App.1985); *Winrow v. State,* 649 S.W.2d 18, 21 (Tenn.Crim.App. 1983); *Garrett v. State,* 534 S.W.2d 325, 327 (Tenn.Crim.App.1975).

**8.** This issue has been previously determined and cannot be litigated in this post-conviction proceeding. *See State v. Teague,* 645 S.W.2d 392, 397 (Tenn.1983).

**9.** This issue has been previously determined and cannot be litigated in this post-conviction proceeding. *See State v. Teague,* 680 S.W.2d 785, 788 (Tenn.1984).

**10.** A contemporaneous objection was made by defense counsel, but the issue was not raised in the appellate court.

**11.** This issue has been previously determined and cannot be litigated in this post-conviction proceeding. *See State v. Teague,* 645 S.W.2d 392, 399 (Tenn.1983), *appeal after remand,* 680 S.W.2d 785, 790 (Tenn.1984).

(h) the State failed to prove beyond a reasonable doubt the aggravating circumstances outweighed the mitigating circumstances;[12]

(i) the method of execution, namely, electrocution, amounts to the infliction of wanton and unnecessary torture;[13]

(j) the death penalty, as applied in Tennessee is discriminatory on the basis of gender;[14] and

(k) no significant proportionality review was applied in this case or in other cases in which the death penalty is imposed.[15]

In each instance where the ground was waived due to the petitioner's failure to raise the ground in the two previous direct appeals to the Tennessee Supreme Court, the petitioner has either failed or made no effort to overcome the statutory presumption or inference of waiver.

**12.** This issue, if considered on the merits, would not be meritorious. *See State v. Pritchett,* 621 S.W.2d 127, 141 (Tenn.1981); *Houston v. State,* 593 S.W.2d 267, 276–277 (Tenn.1980).

**13.** The federal courts have ruled that electrocution, as a means of carrying out the mandate of a jury sentence of death, does not constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. *In re Kemmler,* 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890); *Sullivan v. Dugger,* 721 F.2d 719 (11th Cir.1983); *Spinkellink v. Wainwright,* 578 F.2d 582, 616 (5th Cir.1978).

Our Supreme Court has ruled that the method of execution prescribed by law in Tennessee, electrocution, does not violate either the federal or state mandate against the infliction of cruel and unusual punishment. *State v. Barber,* 753 S.W.2d 659, (Tenn.1988); *State v. Porterfield,* 746 S.W.2d 441, 451 (Tenn.1988); *State v. Adkins,* 725 S.W.2d 660, 664 (Tenn.1987), *cert. denied,* 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987); *State v. Harbison,* 704 S.W.2d 314, 318 (Tenn.1986), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2261, 90 L.Ed.2d 705 (1986); *State v. Harrington,* 627 S.W.2d 345, 349 (Tenn.1981), *cert. denied,* 457 U.S. 1110, 102 S.Ct. 2913, 73 L.Ed.2d 1320 (1982); *State v. Groseclose,* 615 S.W.2d 142 (Tenn.1981), *cert. denied,* 454 U.S. 882, 102 S.Ct. 366, 70 L.Ed.2d 193 (1981); *Houston v. State,* 593 S.W.2d 267, 276 (Tenn.1980), *cert. denied,* 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980); *Cozzolino v. State,* 584 S.W.2d 765, 767 (Tenn.1979).

**14.** This issue was not raised in either of the two prior proceedings, and, as a result, has been waived. Furthermore, the record is silent as to

## SCOPE OF APPELLATE REVIEW IN POST–CONVICTION PROCEEDINGS

Since several issues raised by the petitioner are to be considered on their respective merits, it is necessary to establish the scope of appellate review in post-conviction proceedings.

When the petitioner in a post-conviction proceeding is afforded an evidentiary hearing on the grounds set forth in his petition, the findings of fact made by the trial court at the conclusion of the hearing have the weight of a jury verdict; and these findings are binding upon this Court unless we conclude the evidence contained in the record preponderates against the judgment of the trial court.[16]

When the petitioner seeks to vitiate a conviction on the ground that counsel's representation was ineffective the petitioner

this issue. Apparently, the petitioner did not present evidence in support of this claim in the trial court. Thus, he has failed to carry the requisite burden of proof at the evidentiary hearing; and the trial court is presumed to have properly dismissed the petition as it pertained to this ground. Statements made by counsel during the course of trial, a hearing in support of a motion, pleadings on an appellate brief are not evidence. *See Hillhaven Corp. v. State ex rel. Manor Care,* 565 S.W.2d 210, 212 (Tenn.1978); *Price v. Mercury Supply Co., Inc.,* 682 S.W.2d 924, 929 n. 5 (Tenn.App.1984); *State v. Rhoden,* 739 S.W.2d 6, 16 (Tenn.Crim.App.1987); *Davis v. State,* 673 S.W.2d 171, 173 (Tenn.Crim.App. 1984); *Trotter v. State,* 508 S.W.2d 808, 809 (Tenn.Crim.App.1974).

**15.** The petitioner has also waived this issue because he has failed to cite any authority in support of this issue. Tenn.R.App.P. 27(a)(7); Tenn.Ct.Crim.App. 10(b). Moreover, there is no constitutional right to proportionality review of a death sentence. *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Since this issue does not rise to constitutional dimensions, it is not cognizable in a post-conviction proceeding. T.C.A. § 40–30–105; *Housler v. State,* supra. In addition, no evidence was offered at the evidentiary hearing regarding this issue. Thus, the petitioner failed to carry the requisite burden of proof as to this issue.

**16.** *Turner v. State,* 698 S.W.2d 90, 91 (Tenn. Crim.App.1985); *State v. Swanson,* 680 S.W.2d 487, 490 (Tenn.Crim.App.1984); *Clenny v. State,* 576 S.W.2d 12, 14 (Tenn.Crim.App.1978), *cert. denied,* 441 U.S. 947, 99 S.Ct. 2170, 60 L.Ed.2d 1050 (1979); *Janow v. State,* 4 Tenn.Cr.App. 195, 470 S.W.2d 19, 21 (1971).

must prove by a preponderance of the evidence (a) the services rendered or advise given by counsel fell below "the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn.1975), and (b) the unprofessional conduct or errors of counsel "actually had an adverse effect on the defense." *Strickland v. Washington,* 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 697 (1984). Prior to *Strickland* this Court had already required a showing of prejudice as a prerequisite to relief. *Williams v. State,* 599 S.W.2d 276, 279 (Tenn.Crim. App.1980). Subsequently, this Court adopted the *Strickland* standards. *See Best v. State,* 708 S.W.2d 421, 422 (Tenn. Crim.App.1985).

Since the trial court found that the petitioner failed to establish the grounds, which have not been waived, by a preponderance of the evidence, and dismissed the petition, this Court must review the record in the case *sub judice* for the purpose of determining whether the trial court's findings of fact preponderate against the judgment entered by the trial court.[17]

### EFFECTIVENESS OF COUNSEL DURING VOIR DIRE EXAMINATION

The petitioner contends that trial counsel were ineffective during the voir dire examination of the prospective jurors because counsel failed to (a) attempt to rehabilitate the prospective jurors who were excused by the trial court for cause when the prospective jurors stated their opposition to the death penalty, and (b) examine prospective jurors in a manner to discover and exclude jurors who would automatically impose a death sentence if the petitioner was found guilty of first degree murder. We disagree.

The record supports the findings of the trial court that these two issues are without merit. It is obvious from a reading of the record that trial counsel were effective in the voir dire of the prospective jurors; and, furthermore, the petitioner failed to establish that he was prejudiced as a result

of counsel's representation during voir dire examination. *See Strickland v. Washington,* supra; *Baxter v. Rose,* supra.

 Our examination of the record reveals that the trial court properly excused the prospective jurors, who the petitioner contends did not state unequivocally that they would refuse to impose the death penalty. *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). These prospective jurors stated that they would refuse to assess the death penalty.

The State of Tennessee, like the accused, is entitled to an impartial jury in capital cases. *Houston v. State,* 593 S.W.2d 267, 272 (Tenn.1980), *cert. denied,* 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980). In *Houston* our Supreme Court said:

> Impartiality requires not only freedom from jury bias against the accused and for the prosecution, but freedom from jury bias for the accused and against the prosecution. *Hayes v. Missouri,* 120 U.S. 68, 70–71, 7 S.Ct. 350, 30 L.Ed. 578 (1887). *Spinkellink v. Wainwright,* 578 F.2d 582, 593–596 (5th Cir.), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1978); *Eason v. State,* 65 Tenn. 466 (1873). A juror who cannot follow the law and instruction of the trial judge on capital punishment is not impartial to the state ... *Spinkellink v. Wainwright,* supra, at 595–596. In *Witherspoon v. Illinois,* 391 U.S. 510, 513–514, 88 S.Ct. 1770, 1772, 20 L.Ed.2d 776 (1968) and *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 2960–2961, 57 L.Ed.2d 973 (1978), the Supreme Court held that the trial judge could properly excuse such a juror for cause.

593 S.W.2d at 272.

This issue is without merit.

### FAILURE TO REVEAL EXCULPATORY EVIDENCE

 The petitioner contends that the State of Tennessee failed to reveal that

---

**17.** *Turner v. State,* supra; *State v. Swanson,* supra; *Clenny v. State,* supra; *Janow v. State,* supra.

members of the Chattanooga Police Department had entered into an agreement with Jimmy Cook regarding his testimony at the trial and subsequent sentencing hearing. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). We disagree.

Trial counsel filed a motion to require the State to reveal any agreement entered into between the State and any prosecution witness that could conceivably influence the testimony of any prosecution witness. The trial court subsequently granted the motion. It appears that the State denied the existence of any agreement. Chattanooga police officers testified at the trial that no promises had been made to either Marshall Skinner or Jimmy Cook in exchange for their respective testimony. Cook testified at the trial that the police "didn't say anything about charging me with murder."

The petitioner presented the affidavit of Jimmy Cook at the evidentiary hearing. *See* T.C.A. § 40–30–117. The affidavit recites in part:

From the beginning of the interrogation the questions were aimed at blaming Randy Teague [the petitioner] and the police told me that if I did not answer their questions, they were going to charge me with first degree murder. I believed them. After I gave them a statement, I was not charged with anything.

Cook also recanted a portion of his trial testimony in the affidavit. The record reflects that Cook had been previously convicted of burglary, receiving stolen property, and larceny.

We agree with the State of Tennessee that the statement contained in Cook's affidavit, taken as true, does not constitute an agreement or "deal" in exchange for Cook's testimony at either the initial trial or second sentencing hearing. In other words, the statement contained in the affidavit does not constitute exculpatory evidence within the meaning of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

This issue is without merit.

## PROSECUTORIAL MISCONDUCT IN MISLEADING THE JURY CONCERNING ITS ULTIMATE RESPONSIBILITY FOR DETERMINING THE APPROPRIATENESS OF THE DEATH SENTENCE

The petitioner contends that the prosecution misled the jury concerning its ultimate responsibility for determining the appropriateness of the sentence to be imposed following his conviction for murder first degree. The petitioner cites *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), in support of this contention.

During his rebuttal argument, the assistant district attorney general told the jury:

Your voice will be heard. Whether you know it or not, your voice will be heard. It will ring out all across the state of your verdict right here, from Johnson City to Memphis, all across this state, from Clarksville down to Chattanooga. And there can be one of two things when your voice is heard. When that rings out, ladies and gentlemen, it can ring out one of two things. It can ring out that the Rutherford County jury in the Raymond Teague case returned a verdict of sympathy. Or it can ring out loud and clear to everybody else who wants to kill somebody, especially a witness against them, it can ring out and say, the people of Rutherford County in the Raymond Teague case came back and rendered a verdict of justice. And let it be heard.

This issue is without merit for two reasons. First, this issue was waived. Tenn.R.App.P. 36(a). The petitioner failed to interpose a contemporaneous objection when this argument was advanced by the assistant district attorney general. As a consequence, this procedural default prevents the petitioner from litigating this issue in a post-conviction proceeding. *Arthur v. State,* 483 S.W.2d 95, 97 (Tenn. 1972). Second, this case is distinguishable from the United States Supreme Court's decision in *Caldwell* as well as the recent opinion of this Court in *State v. Johnson.*[18]

18. *Cecil C. Johnson v. State,* Davidson County No. 83–241–III, 1988 WL 3632, opinion filed at Nashville, January 20, 1988, *app. for perm. to app. granted* August 29, 1988.

Unlike *Caldwell* and *Johnson,* the assistant district attorney general in the case *sub judice* did not lead the jury to believe that the responsibility for determining the appropriateness of the sentence rested elsewhere, namely, an appellate court. The remarks made by the assistant district attorney general did not shift, or attempt to shift, the responsibility for a death sentence from the jury to the appellate court reviewing the sentence.

This issue is without merit.

### REQUEST FOR INVESTIGATIVE SERVICES

■ Counsel representing the petitioner admitted in the trial court and this Court that he was privately retained to represent the petitioner in the trial court. The record reflects that the family also employed Mr. Jeffery Blum, who had previous experience in the investigation of capital cases, to assist counsel in the investigation of the petitioner's cases. However, on two separate occasions counsel moved the trial court for the services of an investigator and the appointment of additional counsel at state expense to assist retained counsel in the preparation and trial of the grounds raised in the petitions for post-conviction and the writ of error *coram nobis*. *See* T.C.A. § 40–14–207 and Tenn.Sup.Ct. Rule 13. The trial court granted the request for additional counsel. However, petitioner's retained counsel was of the opinion that the attorney appointed by the trial court was of no assistance to him. The trial court denied the request for the appointment of and compensation for an investigator. The petitioner now contends the trial court committed egregious error in denying his request for the appointment of and compensation for an investigator.

The trial court properly refused the petitioner's request for investigative services.

A fair reading of T.C.A. § 40–14–207(b) and Rule 13 of the Tennessee Supreme Court, coupled with the fact that T.C.A. § 40–30–121 is silent as to these matters, leads this Court to the conclusion that the provisions of this statute and rule are limited in scope and application to the trial of an accused for a capital offense when the district attorney general has announced his intention to seek the death penalty. The statute and rule do not apply to post-conviction proceedings notwithstanding the fact the petitioner has been sentenced to the extreme penalty of death.

■ The petitioner's reliance upon *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), is misplaced. The rule created by the United States Supreme Court in this decision does not require the funding of experts in post-conviction proceedings. Moreover, these services, as indicated, were being furnished by the petitioner's family. The petitioner's reliance upon *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Strickland v. Washington,* supra, is likewise misplaced. There is no constitutional right to the effective assistance of counsel in post-conviction proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Dankert v. Wharton,* 733 F.2d 1537 (11th Cir.1984); *State v. Wilson,* 667 S.W.2d 113, 114 (Tenn. Crim.App.1983).

We parenthetically note that the petitioner has failed to cite any cases or other authority, except those cases hereinabove distinguished, which support his entitlement to investigative services in a post-conviction or error *coram nobis* proceeding.

This issue is without merit.

### FUNDAMENTAL UNFAIRNESS DURING POST–CONVICTION AND ERROR CORAM NOBIS PROCEEDINGS

The petitioner contends that the trial court's conduct, statements and rulings during the post-conviction and error *coram nobis* proceedings were tantamount to a denial of due process of law—a denial of his right to present his case and make a record for the appellate court. We conclude from a reading of the record that the petitioner had ample time to present his case for presentation in the trial court; and the trial court afforded the petitioner an exceptionally fair evidentiary hearing regarding both proceedings.

The petitioner first contends that the trial court committed prejudicial error in denying him a continuance. He argues that the denial of the continuance prevented the petitioner, who was confined to the maximum security unit of the state penitentiary, commonly referred to as "death row," a reasonable opportunity to investigate the grounds alleged in the petition "given the limited resources that were available to him."

The record reflects that the family of the petitioner retained counsel to represent the petitioner as early as September of 1985; and the family likewise retained a private investigator, apparently at the suggestion of counsel, to assist in the investigation of the case. The investigator was employed in September of 1985. Both retained counsel and the investigator resided in Nashville where the petitioner was confined. Thus, the petitioner had in excess of seven months to investigate his cases; and the petitioner was readily available to both counsel and the investigator.

A motion for a continuance addresses itself to the sound discretion of the trial court; and this Court will not interfere with the exercise of the trial court's discretion unless this Court finds the trial court clearly abused its discretion. *See Moorehead v. State*, 219 Tenn. 271, 274–275, 409 S.W.2d 357, 358 (1966); *State v. Seals*, 735 S.W.2d 849, 853 (Tenn.Crim.App.1987); *State v. Wooden*, 658 S.W.2d 553, 558 (Tenn.Crim.App.1983). In the case *sub judice* the trial court did not abuse its discretion in denying the petitioner's motion for a continuance. *See Brotherton v. State*, 477 S.W.2d 522, 524 (Tenn.Crim.App.1971). Theoretically, one could continue an investigation into the facts of a capital case until the person laboring under a death sentence died from natural causes.

The petitioner also complains that the remarks made by the trial court during the course of the proceedings indicated a "general hostility to any proof that was introduced favorable to the Appellant" and an attitude that was "unreceptive to the proof presented by the Appellant." We disagree.

The statements made by the trial court, as outlined in the petitioner's statement of facts, simply relate to the trial judge's assessment of the credibility of certain witnesses and portions of the testimony given by the witnesses. While a trial judge should refrain from making such observations during the course of an evidentiary hearing, the petitioner was not prejudiced by these remarks. In the final analysis the trial judge must assess the credibility and veracity of the witnesses as a prerequisite to the preparation of his findings of fact and conclusions of law. In the case *sub judice* the trial judge advised the parties of his assessment of the credibility of some of the witnesses during or after the completion of the witness' testimony.

Bob Martin, an officer with the Chattanooga Police Department, attributed his removal from the investigation of the John Mark Edmonds case to politics as well as an alleged statement, supposedly made by Terri Teague to Martin, that Mrs. Teague's parents had paid a substantial sum of money to a ranking police officer to have Martin removed from the investigation and to insure that Raymond Teague was charged with the murder of Edmonds. When this statement was made, the trial judge stated: "I place no credence at all in that. I place no credence at all in Mr. Martin's testimony."

The evidence contained in the record justifies the trial court's conclusion. First, the parents of Mrs. Teague testified at the hearing and emphatically denied making any such payment or demand. Second, Martin had previously been diagnosed as a paranoid schizophrenic. He encountered problems handling stress, and a doctor advised the department that Martin should be placed in a position with little stress due to blood pressure complications. Third, the police documents pertaining to the Edmonds murder case were found strewn across the back seat of Martin's cruiser; and some of these documents bore the fingerprints of the petitioner. In summary, Martin's credibility was extremely suspect, and his testimony was impeached in several respects.

Connie Leffew simply related the actions, statements and her observations and impressions of Terry Wynne, a coemployee, whom the petitioner contended was an accomplice to the murder of Mrs. Teague. She had no personal knowledge of the events which occurred before, during or after Mrs. Teague's death. The fact that she did not discuss Skinner's alleged killing of Mrs. Teague after Wynne told her that Skinner had killed the victim was unusual. Mrs. Leffew had insisted that Wynne tell her what had occurred and why he did not want to talk to the police. In addition, her testimony was inconsistent with the records of her employer regarding when Marshall Skinner worked at the restaurant. In view of these facts, and the trial court's observation of the witness, the conclusion of the trial judge that "[h]er testimony just was not believable" was completely justified.

■ When the petitioner introduced the affidavit of Jimmy Cook, the trial judge stated that he was "not going to consider it," but the petitioner could file it for the record. A reading of the records of the trial and subsequent re-sentencing hearing establishes that Cook committed perjury at the trial, the subsequent sentencing hearing, or in his affidavit. Cook recanted portions of this trial testimony. In addition, the record reflects that Cook had what appears to be a rather lengthy criminal record. Thus, the reasons why the trial judge refused to find Cook credible are obvious and appear on the face of the record in these cases. The trial judge was asked to consider these records, and he could take judicial notice of these records as well.

The petitioner contends that the trial court excluded relevant material and admissible evidence favorable to the petitioner, which "strikes to the heart of Appellant's due process rights." We have reviewed the "relevant material and admissible evidence" that the petitioner contends was erroneously excluded and conclude that the petitioner's right to due process was not violated by the trial court.

■ The testimony concerning the alleged payment to the Chief of Detectives was hearsay based upon hearsay. Mrs.

Teague's parents, as indicated, testified no payment was made, and, absent additional evidence that such a payment was in fact made, the petitioner was not entitled to use the hearing as a discovery device or a fishing expedition for the purpose of reviewing their financial records. The balance of the evidence was either cumulative to evidence already in the record or to be used in rebuttal to impeach certain witnesses. Evidence concerning the exculpatory evidence in the John Mark Edmonds case is rendered moot in view of our decision released today in that case. Thus, this contention is devoid of merit.

We parenthetically note that this issue has been waived. The petitioner has failed to cite authority in support of these sub-issues. *See* Tenn.R.App.P. 27(a)(7); Tenn.Ct. Crim.App. 10(b); *State v. Hawk,* 688 S.W.2d 467, 473–474 (Tenn.Crim.App.1985); *State v. Eberhardt,* 659 S.W.2d 807, 811 (Tenn.Crim.App.1983); *State v. Scott,* 626 S.W.2d 25, 28 (Tenn.Crim.App.1981); *State v. Dakin,* 614 S.W.2d 812, 814 (Tenn.Crim. App.1980).

This issue is without merit.

## USE OF VOID CONVICTION TO SUPPORT AN AGGRAVATING CIRCUMSTANCE

■ When the second sentencing hearing was concluded, the jury found that the State of Tennessee had proven two aggravating circumstances beyond a reasonable doubt: (a) the petitioner had previously been convicted of a felony involving the use or threat of violence to the person, T.C.A. § 39–2–203(i)(2), and (b) the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the petitioner. T.C.A. § 39–2–203(i)(6). The jury further found that there were no mitigating circumstances sufficiently substantial to outweigh the aggravating circumstances. As a result, the jury sentenced the petitioner to the extreme penalty of death.

In an opinion being released today, this Court has reached the conclusion that the petitioner's conviction for being an accessory before the fact to second degree murder,

which formed the basis for the first aggravating circumstance hereinabove set forth, is void. As a result, the conviction has been set aside and vacated, and the cause remanded to the trial court for a new trial.

While our decision in the John Mark Edmonds case has the effect of invalidating the first aggravating circumstance, our decision does not invalidate or in any manner impair the second aggravating circumstance found by the jury, namely, the petitioner killed Mrs. Teague for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of himself for the murder of John Mark Edmonds. Thus, the question arises as to whether the petitioner is entitled to a new sentencing hearing to determine the appropriate punishment for killing Mrs. Teague. We conclude that the petitioner's death sentence should be set aside and vacated, and this cause remanded to the trial court for a new sentencing hearing.

In the case of *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), where the facts are strikingly similar to the facts in this case, the United States Supreme Court, applying the Eighth and Fourteenth Amendments to the United States Constitution, ruled that the defendant was entitled to a new sentencing hearing.

In *Johnson* the jury found three aggravating circumstances, any one of which, as a matter of Mississippi law, would have been sufficient to support a death sentence. One of the aggravating circumstances found by the jury was that the defendant had been previously convicted of a felony involving the use or threat of violence to the person of another. In support of this aggravating circumstance the prosecution introduced evidence that the defendant had been convicted of second-degree assault with intent to commit first-degree rape in the State of New York.

Subsequent to his conviction in Mississippi, Johnson launched a collateral attack upon the New York conviction. The defendant was ultimately successful in having his New York conviction reversed by the New York Court of Appeals. Thereafter, the defendant filed a motion in the Mississippi Supreme Court seeking post-conviction relief from his death sentence on the ground that the New York conviction was invalid and could not be used as an aggravating circumstance. The Mississippi Supreme Court denied the relief sought.

The United States Supreme Court concluded that the defendant was entitled to a new sentencing hearing notwithstanding the fact there were two remaining aggravating circumstances which had not been attacked or shown to be infirmed. The court stated the error, as in the case *sub judice*, "extended beyond the mere invalidation of an aggravating circumstance supported by evidence that was otherwise admissible" because "the jury was allowed to consider evidence that has been revealed to be materially inaccurate."

The Tennessee Supreme Court has granted new sentencing hearings in cases where the jury found two aggravating circumstances, but for some reason the Court concluded one of the aggravating circumstances was not supported by the evidence. *State v. Williams*, 690 S.W.2d 517 (Tenn. 1985); *State v. Pritchett*, 621 S.W.2d 127 (Tenn.1981); *State v. Moore*, 614 S.W.2d 348 (Tenn.1981), *cert. denied*, 454 U.S. 970, 102 S.Ct. 517, 70 L.Ed.2d 388 (1981).

In *State v. Moore*, supra, the jury found that: (a) the murder was committed while the defendant was engaged in the commission of a felony, T.C.A. § 39–2–203(i)(7), and (b) the defendant was previously convicted of one or more felonies, which involved the use or threat of violence to the person. T.C.A. § 39–2–203(i)(2). Our Supreme Court affirmed the defendant's conviction for murder first degree, but ruled that the State had failed to prove the defendant's prior convictions involved the use or threat of violence to the person of another. In setting aside the death sentence, and remanding the cause to the trial court for a new sentencing hearing, the Court said it had "no way of knowing whether the jury would have imposed the death penalty had they not been permitted to so consider this evidence in their weighing process." 614 S.W.2d at 352.

In *State v. Pritchett,* supra, the jury found that: (a) the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind, T.C.A. § 39–2–203(i)(5), and (b) the murder was committed while the defendant was engaged in the commission of a robbery. T.C.A. § 39–2–203(i)(7). Our Supreme Court found that the State had failed to establish the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind. However, it found that the State had established the murder was committed during the perpetration of a robbery. In setting aside the death sentence, and remanding the cause to the trial court for a new sentencing hearing, the Court said it had "no way of knowing and cannot speculate whether the jury would have imposed the death penalty with one of the two aggravating circumstances withdrawn from their consideration and with the necessity of weighing the one remaining aggravating circumstance against the mitigating circumstances." 621 S.W.2d at 139.

In *State v. Williams,* supra, the jury found that: (a) the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind, T.C.A. § 39–2–203(i)(5), and (b) the defendant was engaged in committing the offenses of robbery, arson, and the unlawful throwing, discharging, or placement of a destructive device or bomb when the murder was committed. T.C.A. § 39–2–203(i)(7). Our Supreme Court again ruled that the State failed to establish that the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind. However, the Court concluded the record established that the murder was committed during the commission of one of the enumerated felonies contained in T.C.A. § 39–2–203(i)(7). In ruling the Court said:

> Our conclusion is that no reversible error was committed in the guilt determination phase of the trial, but, we conclude that reversible error was committed in the penalty phase of the trial, in that:
>
> (1) Evidence in support of one of the aggravating circumstances found by the jury was admitted in violation of defendant's rights under *Bruton v. United States,* supra, and without that evidence the record does not support the jury's finding of that aggravating circumstance. Faced with this problem in other cases this Court has unanimously held that
>
>> "The probability of prejudice resulting from the consideration of the improperly admitted evidence, in our opinion requires that the sentence of death be reversed and the cause be remanded ... for a sentencing hearing."

690 S.W.2d at 533.

The Court also noted that in *Zant v. Stephens,* 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982), where the Georgia Supreme Court set aside one of three aggravating circumstances, but affirmed the death sentence, the United States Supreme Court remanded the case to the Georgia Supreme Court for an explanation of why the elimination of one of the three aggravating circumstances found by the jury did not require a new sentencing hearing. *Zant* was also cited as authority in *Johnson v. Mississippi,* supra.

This Court is aware that our Supreme Court recently held that the failure to prove one of three (3) aggravating circumstances constituted harmless error. *State v. Bobo,* 727 S.W.2d 945 (Tenn.1987). However, in *Johnson v. Mississippi,* supra, the Court ruled that the failure of the Mississippi Supreme Court to assert the harmless error doctrine to affirm the death sentence was "plainly justified" in view of the fact the district attorney argued, as here, that the jury should return a death sentence on the basis of the infirm aggravating circumstance. Thus, it is unclear whether *Johnson* mandates a new sentencing hearing under the peculiar facts of *Johnson* and the case *sub judice;* or this Court is free to apply the harmless error doctrine as our Supreme Court did in *Bobo.*

Assuming that this Court is required to apply the harmless error rule, it cannot be said that the admission of a void and constitutionally infirm conviction for the offense of being an accessory before the fact to murder second degree at the second sentencing hearing was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d

**932**

705 (1967). It is common knowledge that the admissions of other criminal offenses has a devastating effect upon juries. This is particularly true in this case because the offense involved being an accessory to another murder. Furthermore, it is impossible for any court to determine what, if any, effect this evidence played in the weighing process and the decision of the jury to sentence the petitioner to death.

Our conclusion is consistent with the decisions of both the United States Supreme Court and the decisions of our Supreme Court.

### CONCLUSION

We conclude that the judgment of the trial court denying the petition in the nature of a writ of error *coram nobis* is affirmed. Likewise, the judgment of the trial court denying the petition for post-conviction relief is affirmed to the extent it denies the petitioner relief from his conviction for first degree murder. However, the judgment of the trial court denying the petitioner a new sentencing hearing is reversed, and this cause is remanded to the trial court for a new sentencing hearing on the issue of whether the petitioner should receive a life sentence or a death sentence as provided by law.

DUNCAN, P.J., and DAUGHTREY, J., concur.