IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 15, 2015 at Knoxville

**RONNIE L. JOHNSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Wilson County
No. 5600     Ben H. Cantrell, Senior Judge**

———————————

**No. M2014-00247-CCA-R3-ECN – Filed November 24, 2015**

———————————

The Petitioner, Ronnie L. Johnson, appeals as of right from the Wilson County Criminal Court's dismissal of his petition for a writ of error coram nobis. The Petitioner contends that the coram nobis court abused its discretion in dismissing his petition. Discerning no error, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

W. Michael Kilgore, Nashville, Tennessee (on appeal); and Lawrence Alan Poindexter, Lebanon, Tennessee (at coram nobis hearing), for the appellant, Ronnie L. Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; Tom P. Thompson, Jr., District Attorney General; and Thomas Harwell Swink, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

In 1982, the Petitioner was convicted of one count of aggravated rape and one count of aggravated assault. The Petitioner received a life sentence for the aggravated rape conviction. On direct appeal, this court affirmed the Petitioner's aggravated rape conviction but reversed his conviction for aggravated assault. State v. Johnson, 670 S.W.2d 634, 635 (Tenn. Crim. App. 1984). The Petitioner filed a timely petition for post-conviction relief which was dismissed by the post-conviction court. This court affirmed the dismissal of the Petitioner's petition for post-conviction relief. Johnson v. State, 733 S.W.2d 525 (Tenn. Crim. App. 1987).

Since then, the Petitioner has filed a second petition for post-conviction relief and a petition for writ of habeas corpus which were both summarily dismissed. Ronnie Johnson v. State, No. 01C01-9507-CC-00243, 1996 WL 611165 (Tenn. Crim. App. Oct. 24, 1996); Ronnie Johnson v. State, No. 01-C-019107CR00198, 1992 WL 158328 (Tenn. Crim. App. July 9, 1992). The Petitioner also filed a petition for post-conviction DNA analysis which was dismissed because "there were no exhibits to be tested." Ronnie L. Johnson v. State, No. M2002-03033-CCA-R3-PC, 2004 WL 101629, at *1 (Tenn. Crim. App. Jan. 16, 2004).

In 2009, the Petitioner filed the instant petition for a writ of error coram nobis. To understand the Petitioner's claim, a brief discussion of the background of the Petitioner's conviction is needed. In the early 1980s, there were a series of rapes in Lebanon which were believed to have been committed by the same perpetrator. The perpetrator was deemed "the Southside Rapist" by the press. One of these rapes occurred in May 1981. Police found the light bulb from the victim's back porch light partially unscrewed and were able to recover fingerprints from that light bulb. The police were unable to match the fingerprints to a suspect at that time.

In March 1982, another rape occurred. The Petitioner was identified as a suspect in that rape, and his fingerprints were compared to the ones recovered from the light bulb in 1981. The Petitioner's fingerprints matched those found on the light bulb. The Petitioner was indicted for the March 1982 rape in case number 5600 and for the May 1981 rape in case number 5601. The State sought to try the two cases together, but the trial court severed the cases.

The Petitioner was tried for the March 1982 rape, and at his trial, evidence was introduced that the victim identified the Petitioner as her attacker based on his voice, that the victim's blood was found on socks recovered from the Petitioner's home, and that the Petitioner's car was seen parked near the victim's house "during the approximate time of the rape." Based upon that evidence, the Petitioner was convicted. The Petitioner was never tried for the May 1981 rape.

The Petitioner claimed that, at a parole hearing in 2008, he "professed [his] innocence" and was asked by a member of the parole board why his "fingerprints [were] found in the victim's home" if he was innocent. The Petitioner testified at the coram nobis hearing that, until the 2008 parole hearing, he did not "know anything about [any] fingerprints." The Petitioner also testified that after the 2008 parole hearing, he was given newspaper articles his family had collected in which one of the prosecutors and the lead investigator referred to fingerprint evidence being used during the Petitioner's trial.

The Petitioner eventually learned that District Attorney General Tom P. Thompson, Jr., who had assisted in his prosecution, had sent a letter to the parole board

stating that, among the other evidence discussed above, fingerprint evidence had been used to obtain the Petitioner's conviction. The Petitioner admitted at the coram nobis hearing that the prosecutors "didn't mention fingerprints" during his trial. However, the Petitioner argued that based upon the newspaper reports and General Thompson's letter to the parole board, the fingerprint evidence from the May 1981 rape "somehow was used" in his trial for the March 1982 rape or provided to the jury.

General Thompson testified at the coram nobis hearing and admitted that when the Petitioner was up for parole in 2003, he sent a letter to the parole board stating that the evidence at trial "consisted of fingerprint identification, voice identification, and blood tests." General Thompson admitted that when the Petitioner came up for parole again in 2008, he sent a copy of his 2003 letter and stated that his opinion was the same that the Petitioner should not be paroled.

General Thompson testified that he wrote both letters shortly before the Petitioner's parole hearings and that he did not review the case file before writing the letters. General Thompson explained that he simply confused the evidence from the May 1981 rape, which was never tried, with the evidence from the March 1982 rape. General Thompson testified that he did not recall the fingerprint evidence from the May 1981 rape being mentioned or presented to the jury during the trial for the March 1982 rape. General Thompson recalled that the only mention of fingerprints during the trial was by the Petitioner's trial counsel, who noted that the Petitioner's fingerprints did not match any of those found in the victim's house.

General Thompson was asked about a newspaper article from 2002 which stated that the Petitioner's conviction "hung not just on the bloody socks [recovered from his home], but [on] fingerprint evidence too," and quoted the other prosecutor as saying that they "had fingerprints on a light bulb." General Thompson testified that the other prosecutor "was probably" seventy-five in 2002 and that he "might have made the same mistake" General Thompson had. General Thompson reiterated that he remembered "the trial and . . . [the] evidence" and that the fingerprint evidence from the May 1981 rape was not used at trial.

Sheriff Terry Ashe testified that he was the former sheriff of Wilson County and that he was the chief detective of the Lebanon Police Department at the time of the rapes. Sheriff Ashe testified that he was the lead investigator of the rapes and that he did not recall any fingerprint evidence being used during the Petitioner's trial. Sheriff Ashe admitted that a 2008 newspaper article stated that he said "investigator[s] had also found fingerprints that connected [the Petitioner] to the crime." Sheriff Ashe testified that when he spoke to the reporter, he was speaking "about the entire series of sexual assaults that occurred" and not just the one for which the Petitioner was convicted. Sheriff Ashe

reiterated that "[f]ingerprints didn't have anything to do with [the Petitioner's] conviction."

The coram nobis court issued a written order dismissing the petition. In its order, the coram nobis court stated that it had reviewed the trial transcript and "that there was no testimony [about] fingerprints connecting the [P]etitioner to the crime" and that while "some of the [trial] exhibits are missing, the transcript testimony used to authentic the exhibits [did] not in any way refer to fingerprint evidence."[1] The coram nobis court further stated that "the only mention of fingerprints in the transcript was from a State's expert" who testified that the Petitioner's fingerprints were not found on any of the items recovered from the crime scene. The coram nobis court accredited the testimony of General Thompson that "he was simply mistaken twenty-one years later when he tried to recall the trial evidence" and concluded that there was "no credible proof that bogus fingerprint evidence was somehow shown to the jury in secret."

ANALYSIS

On appeal, the Petitioner contends that the coram nobis court abused its discretion in dismissing his petition for a writ of error coram nobis. The Petitioner argues that General Thompson's letters to the parole board and newspaper articles written in 2002 and 2008 constitute newly discovered evidence that the jury was secretly provided with fingerprint evidence from the May 1981 rape at some point during the Petitioner's trial for the March 1982 rape. The State responds that the coram nobis court did not abuse its discretion in dismissing the petition.

A writ of error coram nobis is an extraordinary remedy available only under very narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105(b); see State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The purpose of a writ of error coram nobis "is to bring to the court's attention a previously unknown fact that, had it been known, would have resulted in a different judgment." Wilson v. State, 367 S.W.3d 229, 234-35 (Tenn. 2012).

The decision to grant or deny the writ rests within the discretion of the trial court. Teague v. State, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988). "A court abuses its

---

[1] The record also contains a motion to withdraw filed by the attorney who represented the Petitioner at the coram nobis hearing. In the motion, the attorney states that he reviewed the trial transcript and the State's file and that he "did not see in any records where fingerprint evidence from [the May 1981 rape] was used in the prosecution of" the March 1982 rape.

discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." Wilson, 367 S.W.3d at 235.

The Petitioner's argument is that, at some point during his trial, without his knowledge or being recorded in the trial transcript, the fingerprint evidence from the May 1981 rape was secreted to the jury and used to convict him. The record clearly belies this claim. The coram nobis court found in its review of the trial transcript that no fingerprint evidence was introduced at trial. Likewise, there is no mention of fingerprint evidence in this court's opinion affirming the Petitioner's conviction. See Johnson, 670 S.W.2d at 634.

Both General Thompson and Sheriff Ashe testified that the fingerprint evidence from the May 1981 rape was not used at the trial for the March 1982 rape. Even the Petitioner admitted that the prosecutors "didn't mention fingerprints" during his trial. The coram nobis court found that the only mention of fingerprints during the Petitioner's trial was from an expert witness who testified that the Petitioner's fingerprints were not found on any of the items collected from the crime scene.

With respect to the newspaper articles cited by the Petitioner and General Thompson's letters to the parole board, General Thompson testified that he simply conflated the evidence from the May 1981 rape with the evidence from the March 1982 rape and that the other prosecutor likely did the same when he spoke to a reporter. Sheriff Ashe testified that when he discussed this case with a reporter in 2008, he spoke "about the entire series of sexual assaults that occurred" and not just the one for which the Petitioner was convicted. The coram nobis court accredited this testimony in its order dismissing the petition. Accordingly, we conclude that the coram nobis court did not abuse its discretion in dismissing the petition.

### CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the coram nobis court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-5-