FILED
05/26/2017
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 18, 2017

**KENNETH J. CRADIC v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Sullivan County**
**No. S48157     R. Jerry Beck, Judge**

_____

**No. E2016-01082-CCA-R3-ECN**

_____

The Petitioner, Kenneth J. Cradic, appeals as of right from the Sullivan County Criminal Court's denial of his petition for writ of error coram nobis relief. The Petitioner contends that the coram nobis court erred in denying his petition because he presented newly discovered evidence of his actual innocence through a new witness who would discredit the victim's trial testimony and evidence that the victim recanted her trial testimony on numerous occasions since the trial. Discerning no error, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

David S. Barnette, Jr., Kingsport, Tennessee, for the appellant, Kenneth J. Cradic.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Barry Staubus, District Attorney General; and Andrea Black, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

The Petitioner is currently serving a total effective sentence of forty years' incarceration as a result of his 2006 convictions for three counts of rape of a child and three counts of incest. See State v. Kenneth J. Cradic, No. E2006-01975-CCA-R3-CD, 2008 WL 2937882, at *1 (Tenn. Crim. App. July 31, 2008), perm. app. denied (Tenn. Jan. 20, 2009). The evidence at trial established that the Petitioner admitted to police investigators that he had sex with the victim, his daughter, on at least one occasion. Id. at

*1-2. The victim testified that the Petitioner vaginally penetrated her on three occasions at his home and a motel. Id. at *2.

As pertinent to our review, the victim admitted during cross-examination at trial that she told the Petitioner's wife, "that . . . the [Petitioner] did these things to her because she was afraid of the actual perpetrator." Cradic, 2008 WL 2937882, at *2. The victim also admitted "that she told two other people that the [Petitioner] was not the person who touched her." Id. On redirect examination, the victim testified that her mother's boyfriend, Larry Ritchie, "also touched her but that he did so after the [Petitioner] had touched her." Id. The victim also testified that the Petitioner's wife promised to "buy her gifts if she would tell the authorities that the [Petitioner] did not do anything." Id. One of the victim's cousins testified on the Petitioner's behalf that the victim had said that Larry Ritchie, "not the [Petitioner], 'did it.'" Id.

The Petitioner filed a motion for new trial alleging newly discovered evidence of his innocence in the form of an affidavit from his stepmother stating that "the victim had informed her that the Petitioner did not commit the alleged offenses and that Larry Ritchie had threatened the victim and forced her to testify that the Petitioner committed the alleged offenses." Kenneth J. Cradic v. State, No. E2010-00140-CCA-R3-PC, 2010 WL 2612736, at *6 (Tenn. Crim. App. June 30, 2010). Specifically, the affidavit alleged that Larry Ritchie had threatened to harm the victim, her grandmother, and her brother if she did not testify that the Petitioner had raped her. The trial court denied the Petitioner's motion for new trial on August 16, 2006. This court affirmed the Petitioner's convictions on direct appeal. Cradic, 2008 WL 2937882, at *8.

On May 8, 2015, the Petitioner filed a pro se petition for writ of error coram nobis relief. The essence of the petition was that the Petitioner had recently received a copy of a letter his son, Charles Cradic, had written to the governor as part of the Petitioner's application for clemency. A copy of the letter was attached to the petition. Mr. Cradic alleged in the letter that he knew the Petitioner had not raped the victim because he was always with the victim when she visited the Petitioner, that he had actually witnessed Larry Ritchie rape the victim, that Larry Ritchie threatened him and the victim by threating to "kill [their] family," and that he wanted to testify at trial about these matters, but he was prevented from doing so by his mother and grandmother.

An attorney was appointed to represent the Petitioner in this matter, and an amended petition was filed along with affidavits from the Petitioner, Mr. Cradic, and Mr. Cradic's ex-girlfriend, Amber Keys. The Petitioner's affidavit alleged that he was unaware of the facts alleged in Mr. Cradic's letter until he received a copy of it in July 2014. Mr. Cradic's affidavit made the same allegations as those raised in his letter and also claimed that the victim had "informed [him] years after the trial that [the Petitioner] did not rape her." Ms. Keys's affidavit alleged that the victim had told her "on several

occasions that [the Petitioner] did not rape her" and that the victim had "always maintained . . . that Larry Ritchie raped her."

The State filed a response to the amended petition, arguing that the petition was barred by the applicable statute of limitations and that all the issues raised had been addressed at the Petitioner's trial; therefore, the petition "failed to provide any newly discovered evidence." The coram nobis court held a hearing on this matter in April 2016.

The victim testified at the coram nobis hearing that her trial testimony was true and that the Petitioner and Larry Ritchie had both raped her. The victim explained that Larry Ritchie raped her sometime after the Petitioner had raped her. The victim further testified that Larry Ritchie never threatened her about her testimony at the Petitioner's trial. The victim admitted to telling the Petitioner's stepmother that he had not raped her. The victim explained that this was not true and that she only said it because the Petitioner's stepmother "was threatening [her] and stuff" and because she was "tired of hearing [about] it" from the Petitioner's family. The victim denied telling Ms. Keys that the Petitioner did not rape her and claimed that Ms. Keys "heard it from [her] brother," who had heard it from the Petitioner's stepmother. The victim admitted that she had spoken to the Petitioner on the phone and that he tried to get her to write a letter on his behalf, but she denied ever recanting her testimony to the Petitioner.

Mr. Cradic testified that the victim had never "technically told" him that the Petitioner had not raped her. Mr. Cradic explained that the contents of his letter and affidavit were based on what he had heard from the Petitioner's stepmother. Mr. Cradic further explained that he had received a letter from the Petitioner "telling [him] basically what to say" in his letter to the governor. Mr. Cradic testified that he did not recall Larry Ritchie ever threatening him or the victim. Mr. Cradic also testified that he remembered seeing Larry Ritchie rape the victim but that he did not recall anyone preventing him "from going to the police or anything like that." Mr. Cradic admitted that he did not see the Petitioner rape the victim. However, he testified that he "had suspicions" because when they stayed at the motel the Petitioner "would always make [him] sleep [on] the floor and make [the victim] sleep in the bed with him." Mr. Cradic also recalled the Petitioner's taking the victim into the bathroom with him at his home as the victim had testified at trial.

Ms. Keys testified that there were "times that [the victim] had told [her] that [the Petitioner] had never done anything to her, and then there [were] other times that she had told [her] that [he] did." Ms. Keys admitted that the victim never told her who, other than the Petitioner, had raped her. Ms. Keys testified that the victim had told her that she "felt like" she was threatened, but Ms. Keys admitted that the victim had never said that she was threatened regarding her testimony at the Petitioner's trial. The Petitioner testified

that the victim had recently recanted to him and had agreed to write a letter to exonerate him.

The coram nobis court denied the petition, finding the Petitioner's claims to be "totally incredible" in light of the evidence at the original trial and the testimony at the coram nobis hearing. The coram nobis court also stated that it did not believe that the Petitioner's claims constituted newly discovered evidence because most of the claims had been raised at his original trial. The Petitioner filed a timely notice of appeal, and the matter is now before this court.

ANALYSIS

The Petitioner contends that the coram nobis court erred in denying his petition. On appeal, the Petitioner argues that the victim's inconsistent statements, along with the "inconsistent statements of all the parties," would have resulted in a different verdict at trial. The State responds that most of the Petitioner's claims are barred by the applicable statute of limitations and that the Petitioner failed to establish that the victim's testimony at trial was false.

A writ of error coram nobis is an extraordinary remedy available only under very narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105; see also State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The purpose of a writ of error coram nobis is to bring to the court's attention a previously unknown fact that, had it been known, may have resulted in a different judgment. State v. Vasques, 221 S.W.3d 514, 526-27 (Tenn. 2007).

The decision to grant or deny the writ rests within the discretion of the coram nobis court. Teague v. State, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988). "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." State v. Wilson, 367 S.W.3d 229, 235 (Tenn. 2012).

A petition for writ of error coram nobis must be filed within one year of the date the judgment of the trial court became final. See Tenn. Code Ann. §§ 27-7-103, 40-26-105; Mixon, 983 S.W.2d at 671. The one-year limitations period may be tolled only when required by due process concerns. See Workman v. State, 41 S.W.3d 100, 103 (Tenn. 2001). Courts must "balance the petitioner's interest in having a hearing with the interest of the State in preventing a claim that is stale and groundless" in determining

-4-

whether due process tolls the statute of limitations.  Wilson, 367 S.W.3d at 234.  To do so, courts perform the following steps:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case a strict applications of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

Id. (quoting Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995)).

Recanted testimony may qualify as newly discovered evidence and justify the granting of a writ of error coram nobis.  Mixon, 983 S.W.2d at 672.  However, newly discovered recanted testimony will only justify the granting of a writ of error coram nobis and a new trial if:

> (1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after trial; and (3) the jury might have reached a different conclusion had the truth been told.

Id. at 673 n.17.  Furthermore, any alleged newly discovered evidence must be admissible at trial in order for error coram nobis relief to be granted.  Wilson, 367 S.W.3d at 235.

The petition raised a combination of claims that had been previously addressed and new claims.  The Petitioner's claims regarding the victim's having lied at trial and having been threatened regarding her trial testimony were barred by the statute of limitations.  Those issues were raised at the Petitioner's trial and his motion for new trial, and the victim was cross-examined at trial about having recanted her allegations against the Petitioner.  The claim from Mr. Cradic's letter and affidavit that he witnessed Larry Ritchie rape the victim was also time-barred because the victim testified at trial that Larry Ritchie had "also touched her."

The coram nobis court did not address the statute of limitations with respect to the Petitioner's remaining claims.  The Petitioner's claims that the victim had recently recanted her trial testimony to himself and others can be quickly dispatched.  The coram nobis court found these allegations to be "totally incredible."  The victim testified again that the Petitioner had raped her and explained her inconsistent statements as being the result of threats from the Petitioner's family.  Mr. Cradic recanted the claims in his letter

and affidavit at the evidentiary hearing, and Ms. Keys testified that the victim had said both that the Petitioner had and had not raped her. As such, the Petitioner's claims fail to meet the threshold burden of showing that the victim's trial testimony was false and that her statements recanting that testimony were true.

With respect to the claims that Mr. Cradic could have corroborated the Petitioner's claims that he did not rape the victim, that Larry Ritchie threatened him, and that he was prevented from testifying on the Petitioner's behalf by his mother and grandmother, we note that Mr. Cradic recanted these claims at the evidentiary hearing. In fact, Mr. Cradic testified that he actually had "suspicions" that the Petitioner had raped the victim. Therefore, the only evidence to support these claims, Mr. Cradic's letter and affidavit, would be inadmissible hearsay. See Tenn. R. Evid. 802. Accordingly, we conclude that the coram nobis court did not abuse its discretion in denying the petition.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the coram nobis court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE