IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 6, 2017

**TERRANCE PULLIAM v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 94-01152      John Wheeler Campbell, Judge**

———————————————————

**No. W2016-01472-CCA-R3-ECN**

———————————————————

Petitioner, Terrance Pulliam, appeals from the summary dismissal of his second petition for writ of error coram nobis. He contends that the coram nobis court erred in dismissing his petition as time-barred. Upon review, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Paul K. Guibao, Memphis, Tennessee, for the appellant, Terrance Pulliam.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kirby May, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Procedural history*

In 1995, Petitioner was convicted by a jury of premeditated first degree murder and sentenced to life imprisonment. *State v. Pulliam*, 950 S.W.2d 360, 361 (Tenn. Crim. App. 1996). In this court's opinion affirming Petitioner's conviction on direct appeal, we summarized the facts underlying his conviction, in part, as follows:

> The conflict between [Petitioner] and Lee Franklin began in July, 1992, when [Petitioner] shot Franklin's brother. Following this incident, according to the State's witnesses, Franklin and [Petitioner] occasionally engaged in verbal altercations. On October 2, 1993, at approximately

12:45 a.m., Franklin, his cousin Cameron Aldridge, and a friend Robert Barr, went to Club Memphis to socialize and dance. None of the group drank while at Club Memphis, as the Club does not serve alcohol to those under twenty-one. The group left the Club at approximately 3:20 a.m. to return home. As they entered the parking lot, they encountered another acquaintance, Christopher Body. Body informed Lee Franklin that he had seen [Petitioner] in the parking lot. At this point, Aldridge got into Body's car. Body then circled the parking lot and backed his car into a space adjacent to Franklin's Ford Bronco. The Ford Bronco was parked facing the sidewalk and the street. Franklin and Barr walked toward the Bronco. Barr noticed that the front passenger window of the Bronco had been broken while the group had been inside the Club. As he and Franklin approached the Bronco, [Petitioner's] car hit Franklin at an approximate speed of 30 to 40 miles per hour. [Petitioner] then jumped from his car and fired his gun approximately three times in Franklin's direction. Barr testified that the gun was "some kind of like a black automatic – like a little automatic .25 – anywhere from .25-.32 automatic; something like that." Franklin attempted to run, but fell to the grass in front of his Bronco and rolled onto the sidewalk. [Petitioner] drove out of the parking lot and turned onto the street in front of the Bronco. At this point, Franklin indicated to Robert Barr that he had been shot. Robert Barr testified, "So when [Franklin] said 'I been shot' that's when [Petitioner] stops in the middle of the street, comes, like, over to the passenger's side [of his vehicle], aims out, shoots again." Cameron Aldridge testified that, as [Petitioner] shot at Franklin a second time, he said, "If I didn't get you this time, I got you this time, boy." According to the State's witnesses, neither Franklin nor his companions were armed.

*Pulliam*, 950 S.W.2d at 362.

Petitioner subsequently filed a petition for post-conviction relief alleging ineffective assistance of counsel. *Terrance Pulliam v. State*, No. W1999-00277-CCA-R3-PC, 2000 WL 1285329, at *1 (Tenn. Crim. App. Aug. 30, 2000), perm. app. denied (Tenn. Feb. 12, 2001). The post-conviction court denied relief, and a panel of this court affirmed the denial. *Id*.

On November 15, 2001, Petitioner filed a petition for writ of error coram nobis alleging that he had met an inmate, Redonna Hanna, who revealed he was with the victim at the time of the offense and that the inmate had "signed an affidavit attesting to certain material facts that are contrary to the testimony of three of the State's witnesses." In an

order entered pursuant to Rule 20 of the Rules of the Court of Criminal Appeals, a panel of this court affirmed the denial of Petitioner's writ. *Terrance Pulliam v. State*, No. W2002-00128-CA-R3-CO (Tenn. Crim. App. July 23, 2002) (order). The panel concluded that the writ was untimely and found that Hanna's testimony would "merely corroborate" Petitioner's "recitation of facts." The panel concluded that the evidence, if introduced, "would not have resulted in a different judgment." *Id*.

On January 20, 2016, Petitioner filed the instant "Petition for Writ of Error Coram Nobis or in the Alternative Petition for Habeas Corpus Relief," in which Petitioner alleged that newly discovered evidence would have resulted in a different judgment had it been presented at trial. Petitioner submitted the affidavits of three witnesses who he asserts would have "confirm[ed] the testimony of the Petitioner at his trial, [and] raise[d] doubt about the validity of the state's theory of prosecution for first degree murder." The witnesses included Cameron Aldridge and Robert Barr, whom Petitioner alleged had recanted their trial testimony, and Redonna Hanna, about whom Petitioner previously raised a similar issue in his previous coram nobis petition.

### Coram nobis proceedings

Cameron Aldridge's affidavit stated in part that he had "been in periodic communication with Joe Pulliam, [Petitioner's] father, over the last couple of years in an effort to lay the groundwork to ultimately give a formal statement clarifying and amplifying [his trial testimony.]" Aldridge stated that on July 8, 2014, he gave a statement to a private investigator. He told the investigator that he had "long felt that [his] testimony did not adequately reflect the totality of the circumstances" surrounding the murder. He stated that he "was quite young at the time, was under a lot of stress, and was subjected to substantial coaching by the state prosecutors." Aldridge stated that the victim, Lee Franklin, "was obsessed with being a tough guy and with taking vengeance against Terrance Pulliam . . . ." He stated that Franklin left a loaded 9 millimeter handgun in his own vehicle when he, Franklin, Robert Barr, and Redonna Hanna went into Club Memphis. While they were inside the club, Christopher Body informed them that Petitioner was in the parking lot. Aldridge stated in his affidavit that it would have been impossible for Petitioner to have been driving at 30 to 40 miles per hour when he hit Franklin, but rather Petitioner "bumped him at a speed of less than 5 [miles per hour]" and that "[i]t did not look to be an intentional act." He stated that "[a]fter being bumped by [Petitioner], Franklin ran toward his vehicle, stating that he was going to get his gun." He stated, "[i]t was kill or be *killed*." He also stated that Petitioner "did not fire at Lee Franklin in multiple sequences."

Robert Barr's affidavit stated that he was contacted by a friend of Petitioner's family in December, 2014, and was asked to make a formal statement to the private

investigator. Barr stated that "it has increasingly bothered [him] that key facts that would have considerably helped [Petitioner] were not well-developed on cross[-]examination nor brought up at all in direct examination." He stated that he had criminal charges against him, and prosecutors "were rigid in having me follow their party line." Barr stated that Franklin said he was going to get his gun after Christopher Body told them that Petitioner was in the parking lot at the club. Barr stated that Franklin went to his vehicle to get his gun. Barr did not see Petitioner hit Franklin with his vehicle. Barr's affidavit stated, "[w]hen [Petitioner] shot Franklin, Franklin was coming toward him in a manner that could have been construed as threatening."

Redonna Hanna's affidavit stated that he was present for "the entire sequence of events in the Club Memphis parking lot" but that he was not interviewed by police and was not called to testify at Petitioner's trial. Hanna stated that Franklin "may have tripped" as he was running to get his gun. Hanna stated that the parking lot was "way too crowded" and "it would have been impossible" for Petitioner to have driven 30 to 40 miles per hour as was testified to at trial. Hanna stated that Petitioner shot Franklin "one time only." After Franklin had been shot, he said, "I'm hit. I'm hit. Go get the gun. Go get the gun." Hanna retrieved Franklin's gun and immediately left the scene.

In a written order summarily dismissing the petition, the coram nobis court concluded that the petition was barred by the statute of limitations. The court further concluded that Petitioner failed to establish a due process basis on which to toll the statute of limitations. The court noted that "[P]etitioner raised the existence of these alleged witnesses during his post-conviction petitions and during his post-conviction hearing." The court found, "[P]etitioner knew of these witnesses at the time of the incident and has not alleged that he was surprised by their testimony at trial, or, that he was unable to know of the basis of their testimony at [the] time of the trial." The court also found that Petitioner: (1) failed to establish that the alleged witnesses were newly discovered; or (2) that Petitioner was without fault in failing to present the witnesses at an earlier proceeding. Finally, the court concluded that "even if these alleged witnesses were permitted to testify, their testimony would not have led to a different judgment." The court found that the witnesses' affidavits were "inconsistent with each other and inconsistent with prior testimony they have given, the testimony of other witnesses, and with the forensic evidence presented at trial."

*Analysis*

A writ of error coram nobis is an extraordinary remedy available only under very narrow and limited circumstances. *State v. Mixon*, 983 S.W.2d 661, 666 (Tenn. 1999). A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may

have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40-26-105; *see State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The purpose of a writ of error coram nobis is to bring to the court's attention a previously unknown fact that, had it been known, may have resulted in a different judgment. *State v. Vasques*, 221 S.W.3d 514, 526-27 (Tenn. 2007). The decision to grant or deny the writ rests within the discretion of the coram nobis court. *Teague v. State*, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988).

A petition for writ of error coram nobis must be filed within one year of the date the judgment of the trial court becomes final in the trial court. *See* T.C.A. §§ 27-7-103, 40-26-105. The one-year limitations period may be tolled only when required by due process concerns. *See Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001). To determine whether due process requires the tolling of the statute of limitations, courts must balance the State's interest in preventing "stale and groundless claims" against the petitioner's interest in having a hearing to present newly discovered evidence which may have led to a different outcome at trial. *Id*. at 103. Courts apply the following three-step analysis to balance those interests:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would have normally commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995). Whether a claim is time-barred is a question of law, which this court reviews de novo. *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010).

Petitioner acknowledges that his petition was filed more than one year after the judgment became final. He argues that due process should toll the statute of limitations. Petitioner asserts that "no reasonable opportunity to have this evidence heard existed during the time available under the one[-]year statute of limitations." He alleges that two witnesses who testified for the State at trial recanted their testimony and gave additional testimony that supported Petitioner's theory of self-defense. We disagree.

The statement by Aldridge in his affidavit that Petitioner "would have been unable to leave before Franklin reached his car" is mere speculation, as is his estimation of the speed Petitioner's car was traveling when Petitioner hit the victim. Additionally, Petitioner has failed to show that the grounds for relief actually arose after the limitations period should have commenced. In his affidavit, Aldridge stated that he had been in

communication with Petitioner's father about his testimony "over the last couple of years in an effort to lay the groundwork to ultimately give a formal statement clarifying and amplifying [his trial] testimony." Barr stated in his affidavit that he was contacted by a friend of Petitioner's family in December, 2014, and asked about his willingness to provide a formal statement, indicating that Petitioner, or someone in his family, knew the content of Barr's statement prior to the request. Barr's statements also fail to qualify as newly discovered evidence. Barr stated that he did not see Petitioner hit Franklin with his car and that "Franklin was coming toward [Petitioner] in a manner that could have been construed as threatening" when Petitioner shot him. His statements are cumulative of Petitioner's testimony at trial.

With respect to claims of "newly discovered" evidence, "the evidence must have been unknown to the defendant at the time of the proceedings giving rise to his conviction." *Wlodarz v. State*, 361 S.W.3d 490, 506 (Tenn. 2012), *abrogated on other grounds by Frazier v. State*, 495 S.W.3d 246, 248 (Tenn. 2016). Newly discovered evidence that "is merely cumulative or serves no other purpose than to contradict or impeach does not warrant the issuance of the writ." *Wlodarz*, 361 S.W.3d at 499 (internal citation and quotation marks omitted).

Petitioner's claim regarding Redonna Hanna has previously been addressed. Petitioner alleged in his first petition for writ of error coram nobis, filed in 2001, that Redonna Hanna had signed a sworn statement that he was with the victim at the time of the offense and was never interviewed by police. In an order, a panel of this court concluded that Petitioner did not establish that the evidence may have resulted in a different judgment had it been presented at trial or that due process required the tolling of the statute of limitations. There is only one affidavit of Redonna Hanna in the record. At the hearing to determine whether due process required the tolling of the statute of limitations, counsel for Petitioner acknowledged "that there has been a previous filing in this regard. But, that was only, solely, to Mr. Hannah [sic]. Mr. Hannah's [sic] testimony, through his affidavit, is bolstered and given extra credibility by the fact that we have Mr. Aldridge and Mr. Barr who have come forward and made similar testimony." Petitioner does not assert that Hanna would provide new or additional testimony than that which was already litigated.

We note that the coram nobis court's conclusion that "even if these alleged witnesses were permitted to testify, their testimony would not have led to a different judgment" is not the proper standard. The proper standard is whether the newly discovered evidence *may* have led to a different judgment. The writ of error coram nobis lies when the alleged newly discovered evidence "*may* have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40-26-105 (emphasis added). Notwithstanding the trial court's error, we affirm its summary dismissal of the petition.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the coram nobis court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE