FILED

07/05/2018

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 16, 2018

**BRETT A. PATTERSON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County**
**No. 031496     Jill Ayers, Judge**

_____

**No. M2017-00978-CCA-R3-ECN**

_____

The Petitioner, Brett A. Patterson, appeals from the Montgomery County Circuit Court's summary dismissal of his petition for a writ of error coram nobis from his 1988 convictions for two counts of first degree murder, first degree burglary, and aggravated rape and his effective sentence of life imprisonment plus forty years. The Petitioner contends that the court erred by denying relief. We affirm the judgment of the coram nobis court relative to the video recording allegations, but we remand for further consideration of the Petitioner's motion to continue relative to the laboratory bench notes allegations.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Brett A. Patterson (on appeal), Henning, Tennessee, Pro Se, and Wayne Clemmons (at hearing), Clarksville, Tennessee, for the appellant, Brett A. Patterson.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; John W. Carney, District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to a 1987 home invasion, during which the Petitioner and his codefendant, Ronnie Cauthern, entered the home of Patrick and Rosemary Smith for the purpose of stealing a large sum of money. Mr. and Mrs. Smith were strangled to death during the incident, and Mrs. Smith was sexually assaulted. *See State v. Brett Patterson*, No. 88-245-III, 1989 WL 147404 (Tenn. Crim. App. Dec. 8, 1989), *perm. app. denied*

(Tenn. Mar. 5, 1990). The Petitioner was convicted after a joint trial with his codefendant. The Petitioner appealed, and in its opinion affirming the convictions, this court summarized the facts as follows:

On the night of January 9, 1987, Brett Patterson and Ronnie Cauthern drove to the home of Patrick and Rosemary Smith, who were both Captains in the United States Army assigned to Fort Campbell as nurses. The defendants wore masks and gloves, and each carried a loaded revolver. After severing the telephone line, the defendants broke a door pane, unlocked the door, and entered the Smiths' house. They were after a large sum of money thought to be kept in the bedroom.

Once inside, the defendants discovered that the Smiths were at home asleep. They awakened them and pulled them out of bed. Patrick Smith tried to fight them off, while Patterson made repeated attempts to subdue him by applying a "sleeper," a wrestling hold designed to cause unconsciousness. Failing this, Patterson strangled Mr. Smith with a length of "880" military cord. Investigators later recovered similar cord from the defendant's residence when they searched it.

Mrs. Smith was strangled with a silk scarf into which a narrow vase was inserted to form a tourniquet. The medical examiner found that the cartilage in her throat had been fractured, an injury which would have resulted only from application of great force. Mrs. Smith had also been raped.

When neither of the Smiths reported for duty on the following morning, two of their co-workers drove to their home to investigate. Finding the door glass broken, they called the police. Investigators arrived promptly and discovered Patrick Smith's body in the master bedroom, and Rosemary Smith's body in a guest bedroom.

The house had been ransacked and numerous items stolen, including articles of clothing, seventy dollars cash, personal checks, credit cards, a video cassette recorder, Mrs. Smith's engagement and wedding rings, her watch, and her purse. The keys to their two cars were also taken.

In the master bedroom, investigators found a piece of paper with Cauthern's name on it. Also written on it was the Smiths' phone number, address, and directions to their residence.

On the morning of January 12, 1987, an informant contacted the police and told them that Patterson and Cauthern, both of whom the

informant knew well, had admitted taking the Smiths' property, sexually abusing Mrs. Smith, and killing them both.

The informant related to investigators how Patterson and Cauthern had broken into the house, described the method by which the Smiths had been strangled, and told of having seen several of the items stolen from their residence. The informant said that Cauthern was confident that he and Patterson would not be caught because they had worn masks and gloves.

Investigators then proceeded to the residence that the defendant shared with Cauthern and a third person-Eric Barbee. When they arrived, all three men were present and officers saw several of the stolen items in the trunk of Cauthern's car.

The residence was searched, and a large amount of incriminating evidence was seized. Both defendants were arrested; both gave detailed and highly inculpatory confessions.

*Id.* at *1-2.

The Petitioner sought post-conviction relief, alleging the ineffective assistance of counsel and various errors during the trial proceedings. The post-conviction court denied relief, and this court affirmed the post-conviction court's determinations. *See Brett Allen Patterson v. State*, No. 01C01-9805-CC-00221, 1999 WL 701455 (Tenn. Crim. App. Sept. 10, 1999), *perm. app. denied* (Tenn. Apr. 24, 2000). The Petitioner later sought to amend his post-conviction petition to include a request for DNA testing. The post-conviction court denied the Petitioner's motion, and this court affirmed. *See Brett Allen Patterson v. State*, No. M2004-01271-CCA-R3-PC, 2006 WL 3093216 (Tenn. Crim. App. Oct. 26, 2006), *no perm. app. filed*.

On December 13, 2016, the Petitioner filed the instant petition for a writ of error coram nobis, alleging that the search of his home and his arrest were unlawful, that trial counsel's ineffective assistance "allowed the State to suppress the video recordings of the prior searches by editing the multiple video tapes," that the State only provided the video recordings of searches conducted after the search warrants arrived at the scene, and that the State knowingly presented perjured testimony from multiple police officers at the suppression hearing relative to the searches. The Petitioner alleged that the perjured testimony and "the suppression" of the video recordings before the warrant was obtained resulted in the trial court's determining his arrest and searches were lawful. The Petitioner asserted that if all of the unedited recordings had been disclosed to the defense and to the trial court, trial counsel could have used the recordings to impeach the perjured testimony. The Petitioner stated that he learned the "long lost video recordings" had been

discovered in the prosecutor's file, had been transferred to DVD, and had been provided to his codefendant's counsel.

The State filed an answer, arguing that the one-year statute of limitations had lapsed and that the Petitioner had failed to state a reason for tolling the statute of limitations. The State also asserted that the Petitioner had failed to state a claim for which relief could be granted, denied the allegations of misconduct, and sought a summary dismissal of the petition for relief. The State submitted a subsequent filing that included this court's opinion in the Petitioner's codefendant's coram nobis proceedings. *See Ronald Cauthern v. State*, No. W2015-01905-CCA-R3-ECN, 2017 WL 1103049 (Tenn. Crim. App. Feb. 24, 2017). In response, the Petitioner sought a motion to continue in order to investigate potential new evidence referenced in the codefendant's coram nobis proceedings related to "laboratory bench notes," indicating that forensic evidence had been contaminated during transportation to the laboratory for analysis.

At the May 1, 2017 hearing, defense counsel told the coram nobis court that the video recordings presented in the trial court proceedings had been edited by the prosecution "in order to hide the fact that the police officers had lied and planted evidence." The prosecutor stated that the unedited recordings from the search were "entered" almost thirty years ago during a suppression hearing and that trial counsel had failed to "[catch] the lies back then." Defense counsel argued that the State engaged in prosecutorial misconduct by hiding evidence and by lying about the nature of the recordings at the time they were introduced in the trial court. Counsel noted this issue had been litigated in the Petitioner's codefendant's coram nobis proceeding and that this court determined that the codefendant's claim relative to the unedited video recordings was time barred and that due process did not require tolling the statute of limitations. *See Ronald Cauthern*, 2017 WL 1103049, at *9-10. Counsel stated that the prosecution's file was not available to him because the file had been sent to Gibson County as a part of the codefendant's coram nobis proceedings and that as a result, he could not view the relevant recordings.

Defense counsel told the trial court that the codefendant's coram nobis petition also referenced "lab bench notes," indicating that blood and DNA evidence were contaminated during transportation to the laboratory for analysis.[1] Counsel stated that he

---

[1] In *Ronald Cauthern*, the petitioner sought coram nobis relief on the basis of newly discovered evidence in the form of the same unedited video recordings at issue in the present appeal and the laboratory bench notes indicating contamination of forensic evidence. The coram nobis court denied relief after determining that the petition was untimely and that due process did not require tolling of the statute of limitations, but the coram nobis court's written order only addressed the allegations relative to the video recordings. On appeal, this court affirmed the coram nobis court's determinations relative to the video recordings but reversed the summary denial of relief relative to the laboratory bench notes and remanded the case for consideration of whether the allegation was time barred, and if so, whether due process required tolling the statute of limitations. 2017 WL 1103049, at *5-7, 10-11.

and the Petitioner had recently learned of the laboratory bench notes and that counsel intended to amend the petition to include the bench notes as newly discovered evidence. Counsel requested a continuance for further investigation.

The prosecution argued that the coram nobis statute required affidavits regarding newly discovered evidence to be attached to a coram nobis petition and that none had been attached. The prosecutor stated, "If [defense counsel] wanted to go down to Gibson County and obtain a copy of the video, which the State has seen in the *Cauthern* matter, bless him, and then he can file an affidavit and file the actual video." Relative to the laboratory bench notes addressed in the codefendant's coram nobis proceeding, the prosecutor stated that the issue was not litigated because the Petitioner's codefendant did not present the laboratory bench notes to the coram nobis court. The prosecutor noted, "[T]here's doubt they even exist." The prosecutor argued that coram nobis petitions were to address guilt or innocence, not search and seizure issues. He stated that the trial court held a suppression hearing in the Petitioner's conviction proceedings, that the issue related to the searches was litigated before the Petitioner's trial, that the issue was litigated again in the post-conviction proceedings, and that the Petitioner was not entitled to litigate the issue a third time.

The coram nobis court found that the Petitioner's judgments became final in 1988, that the time period to file a petition for a writ of error coram nobis expired in 1989, and that the present petition was filed after the statute of limitations had lapsed. The court stated that it had previously reviewed the entire court file, including the video recordings and "laboratory reports" from the trial proceedings. The court determined that the allegation regarding the laboratory bench notes was not raised in the initial petition for coram nobis relief and that no affidavits were presented to the court regarding the video recordings or the laboratory bench notes. The court found that had the affidavit requirement been satisfied, "this is not new evidence." The court found that the recordings and the laboratory bench notes were not later arising evidence because both were part of the trial court proceedings and litigated in the numerous appeals and post-conviction proceedings. The court determined that the evidence would not have resulted in a different outcome at the trial, and it dismissed the petition. The court did not address defense counsel's motion for a continuance to investigate the laboratory bench notes referenced in the codefendant's coram nobis proceedings. This appeal followed.

A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were not litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40-26-105(b) (2012); *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995); *see Cole v. State*, 589 S.W.2d 941 (Tenn. Crim. App. 1979). The purpose of a coram nobis proceeding "is to bring to the attention of the court some fact unknown to the court, which if known would have resulted in a different judgment." *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1966). The decision to grant or deny such

a writ rests within the sound discretion of the court. *Jones v. State*, 519 S.W.2d 398, 400 (Tenn. Crim. App. 1974); *see Teague v. State*, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988). A petition for a writ of coram nobis must be filed within one year of the judgment becoming final in the trial court. *State v. Mixon*, 983 S.W.2d 661, 670 (Tenn. 1999). A judgment becomes final "thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010). A limited exception to the statute of limitations exists when due process requires tolling. *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001).

"When a petitioner seeks a writ of error coram nobis based on newly discovered evidence of actual innocence, due process considerations may require tolling of the statute of limitations." *Harris*, 301 S.W.3d at 145 (citing *Workman*, 41 S.W.3d at 101). "[B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992); *see Workman*, 41 S.W.3d at 102. However, a petitioner "must exercise due diligence in presenting the claim." *Harris*, 301 S.W.3d at 144. Whether due process principles require tolling the statute of limitations is a mixed question of law and fact and is reviewed de novo with no presumption of correctness. *See Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006).

The parties do not dispute that the coram nobis petition was filed long after the statute of limitations expired, and we conclude that the record supports the coram nobis court's determination that the petition was untimely because it was filed approximately twenty-seven years after the judgments became final. Relative to due process tolling, the Tennessee Supreme Court has prescribed a three-part analysis whereby the coram nobis court must

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim. In making this final determination, courts should carefully weigh the petitioner's liberty interest in "collaterally attacking constitutional violations occurring during the conviction process," *Burford*, 845 S.W.2d at 207, against the State's interest in preventing the litigation of "stale and fraudulent claims." *Id.* at 208.

*Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995) (footnote omitted).

The record reflects that the coram nobis court had previously reviewed the trial court record and found that the unedited recordings of the search were contained in the court record. As a result, the coram nobis court determined that the grounds for relief were not later-arising and that due process did not require tolling the statute of limitations. The prosecutor stated at the hearing that although edited recordings were admitted during the trial, unedited recordings were received as evidence during a pretrial suppression hearing. The Petitioner did not argue that the unedited recordings were not provided to the defense during the discovery process. The Petitioner states in his appellate brief that the unedited recordings were discovered by his codefendant's counsel in the prosecution's file or in the trial court clerk's file. Regardless of whether the unedited version was found in the prosecution's or the trial court clerk's files, the record does not reflect that the evidence was discovered or emerged after the Petitioner's trial or that the prosecution failed to provide the evidence to the defense in the conviction proceedings. Therefore, the coram nobis court properly determined that the relevant evidence existed at the time of the trial, that the evidence was not later-arising, and that due process does not require tolling of the statute of limitations. The Petitioner is not entitled to relief on this basis.

Relative to the laboratory bench notes, the coram nobis judge stated at the hearing that she had reviewed the trial court file previously, which included "laboratory reports." The record does not reflect that laboratory bench notes, specifically, were included in the trial court file. The court determined, based on its review of the file, that the laboratory bench notes were not new evidence and would not have impacted the outcome of the trial. The coram nobis court's written order denying relief states that the "lab bench notes would have been an issue that counsel in the original trial and multiple appeals could have pursued." As a result, the coram nobis court dismissed the petition without consideration of defense counsel's motion for a continuance.

The December 2016 pro se petition only focused on the unedited video recordings of the search and did not address laboratory bench notes associated with blood and DNA evidence. The State filed its motion to summarily dismiss the petition on March 15, 2017, which also did not mention any laboratory bench notes. The State submitted a supplemental filing on April 12, 2017, approximately nineteen days before the hearing. The supplemental filing included this court's March 24, 2017 opinion in the Petitioner's codefendant's error coram nobis proceedings. The codefendant's petition alleged that the State had provided the defense, for the first time, a copy of a handwritten "forensics report" containing raw data of blood testing and showing that the standard laboratory protocols were violated during transportation to the laboratory, resulting in contamination of blood samples. *See Ronald Cauthern*, 2017 WL 1103049, at *11. The record in the present case reflects that the State's filing the 2017 *Ronald Cauthern* opinion is the first mention in this case of the laboratory bench notes and of allegations that the samples provided to the laboratory for analysis were contaminated.

On April 27, 2017, three days before the hearing, defense counsel filed a motion to continue and to permit inspection of evidence. The motion stated, in relevant part, that the State's supplemental filing referenced laboratory bench notes that were potential newly discovered evidence relevant to the Petitioner's coram nobis proceeding. The motion stated that to represent the Petitioner effectively, counsel needed to inquire into the laboratory bench notes to determine whether they were relevant to the Petitioner's coram nobis petition. Counsel requested a continuance for further investigation.

Although defense counsel generally stated at the hearing that he and the Petitioner had recently learned of the laboratory bench notes, we glean from the record that counsel attempted to inform the coram nobis court that he and the Petitioner first learned of the laboratory bench notes when the State submitted its supplemental filing approximately two weeks before the scheduled hearing and that counsel needed additional time to investigate the laboratory bench notes and to determine whether the petition should be amended. The coram nobis court did not rule on the motion to continue before it determined that the laboratory bench notes were not newly discovered evidence and would not have impacted the trial. However, no evidence at the hearing shows the specific contents of the laboratory bench notes, and the record reflects that neither the prosecution nor counsel had reviewed the notes before the hearing. Likewise, although the coram nobis court determined that the laboratory bench notes were part of the joint trial court proceedings, this court's opinion in *Ronald Cauthern* reflects that the bench notes were first provided to the Petitioner's codefendant's counsel in 2014. Therefore, the record does not support the coram nobis court's determinations that the laboratory bench notes were not newly discovered evidence and would not have impacted the outcome of the trial.

Although the allegation regarding the laboratory bench notes was not included in the original petition, the coram nobis court's consideration of the issue reflects that the court treated it as though it was before the court without a formal amendment to the petition and without affidavits. Furthermore, we conclude that the coram nobis court erred by summarily dismissing the petition relative to the laboratory bench notes because the record reflects that the counsel and the Petitioner had learned of the laboratory bench notes approximately two weeks before the May 1, 2017 hearing. Absent a showing that counsel or the Petitioner learned of the existence of the laboratory bench notes before 2017, the laboratory bench notes may constitute later arising evidence involving a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Therefore, we remand the case to the coram nobis court for consideration of the Petitioner's motion to continue for the purpose of providing the opportunity to investigate and to determine whether the laboratory bench notes constitute a cognizable claim for coram nobis relief.

In consideration of the foregoing and the record as a whole, the judgment of the coram nobis court dismissing the petition relative to the video recording allegation is affirmed. The judgment of the coram nobis court dismissing the petition relative to the

bench notes is reversed, and the case is remanded for consideration of the Petitioner's motion to continue relative to the laboratory bench notes.

_____
ROBERT H. MONTGOMERY, JR., JUDGE